# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-41329

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARC GARRETT ROSENTHAL,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

October 14, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and BARKSDALE and PRADO, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

This appeal does not challenge the sufficiency of the evidence for charged widespread corruption involving a lawyer, a state judge, and a former state legislator. Instead, the lawyer, Marc Garrett Rosenthal, claims he is entitled to a new trial due to procedural errors, such as in obtaining wiretap evidence. He was found guilty by a jury of: racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), the Racketeer Influenced and Corrupt Organizations Act (RICO) (count one); five counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (counts two–six); witness tampering, in violation of 18 U.S.C. §§ 1512(b)(1) and 2 (count seven); two counts of obstruction of an official

No. 13-41329

proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (counts eight and nine); aiding-and-abetting extortion, in violation of the Hobbs Act, 18 U.S.C. §§ 1951 and 2 (count ten); and three counts of honest-services mail fraud, in violation of 18 U.S.C. §§ 1341, 1346 and 2 (counts 11–13). At sentencing, the district court dismissed counts six and 13 due to insufficient evidence. Rosenthal was sentenced to 240 months' imprisonment.

At issue are the extensions of authorizations to intercept telephone communications admitted as evidence at trial; three jury instructions; and a statement made by the Government during rebuttal closing argument. Each issue is reviewed only for plain error. AFFIRMED.

I.

Rosenthal was a shareholder in Rosenthal & Watson (R&W), a personal-injury law firm with offices in Austin and Brownsville, Texas. In a criminal scheme spanning approximately four years, Rosenthal, among other crimes: bribed a state judge for favorable rulings, orders, and treatment; conspired with others to manipulate personal-injury actions by paying witnesses for false statements and testimony; fabricated evidence; fixed the random case-assignment system in order to ensure cases were filed before judges he preferred; and committed several acts of fraud.

Although several people associated with R&W participated in Rosenthal's offenses, most of the evidence at trial focused on the following individuals: Abel Limas, a state-court judge who became affiliated with R&W; Jim Solis, a former Texas state representative, and of-counsel to R&W; and Gilbert Benavides, an unlicensed lawyer employed by the firm. All three testified against Rosenthal at trial. The Government presented detailed evidence regarding Rosenthal's illegal scheme, grouped below as the Union Pacific Railroad cases, and involvement with then-state-judge Limas.

No. 13-41329

Rosenthal represented the estate of a man killed when a train struck his vehicle at a railroad crossing. According to Benavides' testimony, in an attempt to force a settlement with Union Pacific, he and Rosenthal enlisted Benavides' cousin to make false statements. The cousin stated falsely he was present at the accident scene, and witnessed the train hit the stopped vehicle without sounding its horn or otherwise warning of its approach. Rosenthal used the false statement to induce Union Pacific to settle in 2006 for more than $1 million. At Rosenthal's behest, Benavides paid his cousin $5,000, and another family member $4,000, for their assistance.

In another matter, Rosenthal represented a woman who was severely injured when she fell from a Union Pacific train after attempting to board illegally. Benavides testified Rosenthal directed him to contact a deputy sheriff present at the accident scene and offer to pay him to state falsely the train's engineer invited the woman to board the train. The deputy was also instructed to say he overheard the engineer say Union Pacific "[did] not care if its trains run over wetbacks". The deputy agreed and made these false statements in an affidavit and deposition, which Rosenthal sent to Union Pacific in an attempt to induce settlement. Rosenthal additionally threatened to erect billboards featuring the comment falsely attributed to the engineer. Union Pacific eventually settled in 2007 for $575,000. The deputy received $4,000 for his cooperation.

In a third matter, Rosenthal represented a passenger in an automobile hit by a Union Pacific train. In another attempt to force settlement, Rosenthal contacted Union Pacific and repeated the earlier statements of the deputy. Rosenthal also enlisted a friend to pose as a Union Pacific attorney, telephone the train conductor, and persuade the conductor to state the train's horn had not been blowing at the time of the accident. The effort was unsuccessful; the

3

No. 13-41329

conductor, suspicious of the call, reported it to Union Pacific, which traced it to Rosenthal's associate in 2007.

In 2008, Rosenthal expanded his scheme and began working with Solis, a former state legislator who had represented the city of Harlingen, Cameron County, Texas, from 1993–2006, to bribe Limas, an elected state-court judge in Cameron County, for favorable rulings and treatment. Solis worked primarily in R&W's Brownsville office in Cameron County. Solis testified Rosenthal viewed Limas as a judge who was friendly to plaintiffs. To ensure two high-profile actions would be heard in Limas' court, Rosenthal and Solis worked with an employee in the clerk's office to circumvent the regular assignment process and have the matters assigned to Limas.

Limas was running for re-election during this time period and received thousands of dollars in campaign donations from Rosenthal and others at R&W. Shortly after Limas lost the primary election in March 2008, he spoke with Rosenthal and Solis about a possible "of counsel" position at R&W at the end of his term. According to Limas and Solis, for the remainder of his term as a judge, Limas agreed to enter orders favorable to Rosenthal in each of his pending actions in exchange for a position with R&W, and a share of the recovery in one of those matters. Over several months, Rosenthal, Solis, and Limas had repeated *ex parte* meetings and communications, some of which were intercepted by a Title III wiretap and played for the jury during trial. The conversations included: motions or orders Rosenthal and Solis wanted ruled upon in their favor; instructions to Limas regarding those orders; and confirmation of Limas' financial incentive. Solis testified that, after one such meeting, and pursuant to Rosenthal's instruction, he gave Limas a box containing $8,000.

As the end of Limas' term approached in December 2008, Rosenthal's two above-referenced actions had not been resolved. Solis testified that

4

No. 13-41329

Rosenthal wanted the matters transferred to another plaintiff-friendly judge, rather than Limas' successor. According to Limas' testimony, he transferred the actions, at Rosenthal's request, to another state judge. One day after the transfer, Rosenthal sent Limas a letter offering him a position with R&W. After leaving office, Limas accepted an of-counsel position, and received $100,000 in payments from R&W and Solis' separate business account.

When the defendants in one of Rosenthal's two actions learned Limas was affiliated with R&W, they moved to rescind the transfer order. Limas submitted an affidavit denying any impropriety, and the transferee judge denied the motion. The defendants agreed in 2009 to settle for more than $14 million, and R&W paid Limas $85,000 as his share.

In 2011, a 13-count indictment charged Rosenthal conspired to violate federal statutes in connection with his law practice. His motion, pursuant to 18 U.S.C. § 2515, to suppress evidence procured through Title III intercepts was denied.

In a jury trial that began in early 2013, the Government presented its case over 12 days, with its evidence including, *inter alia,* recordings of the Title III intercepts, and the testimony of 18 witnesses, including Solis, Limas, and Benavides. Rosenthal presented his defense over three days, including his testifying. The jury returned a guilty verdict on all counts.

Following trial, Rosenthal moved for judgment of acquittal for counts six and 13; the motions were granted at sentencing. Rosenthal was sentenced to 240 months' imprisonment, and assessed restitution, jointly and severally with Limas and Solis, in the approximate amount of $13.3 million.

## II.

In not challenging the sufficiency of the evidence, Rosenthal concedes "a rational juror could have found the essential elements of the crimes [of which he was not acquitted] beyond a reasonable doubt". He instead challenges the

No. 13-41329

denial of his motion to suppress wire communications, intercepted pursuant to 18 U.S.C. §§ 2510–2520, and all evidence derived from those communications; three jury instructions; and a statement made by the Government during rebuttal closing argument.

In its response brief and at oral argument, the Government maintained plain-error review applies to all of the issues at hand, urging they were not preserved in district court. Rosenthal, who did not file a reply brief, and therefore did not brief the plain-error position pressed by the Government, agreed at oral argument with the Government's plain-error position, except perhaps for the denial of his suppression motion. No authority need be cited for the long-established rule that we, not the parties, determine our standard of review; nevertheless, Rosenthal's concession is revealing.

To preserve in district court a claim for appellate review, a party "must raise objections that are specific enough to put the district court on notice of potential issues for appeal and allow the . . . court to correct itself". *United States v. Sanchez-Espinal*, 762 F.3d 425, 429 (5th Cir. 2014). As discussed *infra*, Rosenthal did not meet this standard. Accordingly, each issue will be reviewed only for plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

To demonstrate plain error, Rosenthal must show a forfeited error that is plain (clear or obvious) and affected his substantial rights. *Id.* If the prerequisites have been established, our court has discretion to remedy the error, but will do so only if it "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings". *Id.* As demonstrated *infra*, each claim fails to satisfy the demanding clear-or-obvious-error requirement.

A.

Rosenthal claims the district court erred by overruling his motions to suppress intercepted wire communications and the evidence obtained from

No. 13-41329

them, in violation of 18 U.S.C. §§ 2516, 2518, and 2515. In district court, however, Rosenthal did not identify the wiretap applications or orders he now claims to be in error. A similar failing was noted by the district court in its 23 January 2013 order denying suppression. (In any event, even if Rosenthal could demonstrate clear-or-obvious error, he has not shown his substantial rights were affected, especially given the testimony of Limas and Solis, which paralleled the wiretap evidence Rosenthal seeks to suppress.)

As part of its investigation, the Government obtained court orders pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, permitting interception of calls to and from five telephones. Two of the telephones, numbers 2 and 4, belonged to Limas; number 5, to Solis; and numbers 1 and 3, to an individual who conspired separately with Limas to influence criminal matters. Calls involving Rosenthal were intercepted only on telephones 2 and 5; he concedes he lacks standing to challenge evidence obtained from the other three.

Rosenthal claims: the application, supporting affidavit, and order relating to authorization of the third wiretap extension for telephone 2 violated Title III; and, therefore, intercepted communications pursuant to that, and subsequent orders, including for telephone 5, should have been suppressed. (The Government also understands Rosenthal's challenge starts with this authorization. His failure to file a reply brief compounds any uncertainty about the precise nature of this issue.)

1.

Rosenthal claims the Government's application and affidavit violated § 2516(1)(a–t), by failing to identify the specific offenses under investigation. Along that line, and subject to satisfying statutory requirements, § 2516 authorizes the Government to intercept wire or oral communications in the course of investigating various offenses listed in subsections (a–t). Subsection

No. 13-41329

(1)(b), at issue here, includes "any offense which involves . . . extortion". 18 U.S.C. § 2516(1)(b).

The Government's application and supporting affidavit for a third extension of authority to intercept telephone 2 complied with § 2516. The application alleged extortion, in violation of 18 U.S.C. § 1951, and aiding-and-abetting extortion, in violation of 18 U.S.C. § 2, with regard to telephones 1, 2, and 3.    Additionally, the underlying affidavit explained the extortion investigation in great detail, and identified:   specific instances where Limas accepted money in exchange for favorable outcomes for individuals appearing in his court, and several calls made to and from telephone 2 in furtherance of the extortion scheme.

2.

In challenging the order granting authorization for the third extension, Rosenthal claims it violated § 2518(4)(c), by failing to provide "discrete, identified and specifically enumerated Title 18 offense violations".   But, the order stated probable cause existed to support the belief  that telephones 1, 2, and 3 were being used in connection with "offenses enumerated in Section 2516 of Title 18, United States Code . . . involving: (a) extortion . . . and (b) aiding and abetting [extortion] . . . ", and authorization was granted on that basis.

Therefore, concerning the contested wiretap evidence, we need not address Rosenthal's other claims, including:  application of the "fruit of the poisonous tree" doctrine; the Government's "good faith" not being applicable; his defensive position on all counts being undermined, resulting in prejudice; and a new trial's being required.

B.

Rosenthal presents three challenges to the jury instructions.   He maintains he preserved these issues by proffering jury instructions that were refused.  This was insufficient: "proposed instructions do not preserve error on

No. 13-41329

appeal, absent an objection specific to the counts at issue". *United States v. Dupre*, 117 F.3d 810, 816 (5th Cir. 1997).

1.

Count one of the indictment charged Rosenthal with RICO conspiracy under 18 U.S.C. § 1962(d). Rosenthal contests the instructions for that count in three ways.

a.

He maintains (in part perhaps based on a claimed insufficient indictment which he unsuccessfully challenged pretrial), that the court failed to identify and instruct on which predicate offenses constitute "a pattern of racketeering activity".

Under 18 U.S.C. § 1962(c), it is a crime for "any person employed by or associated with any enterprise engaged in, [or affecting] interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt". 18 U.S.C. § 1962(c). Section 1962(d), at issue here, prohibits conspiracy to violate any part of § 1962. "The elements of a conspiracy under § 1962(d) are simply (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the *overall objective* of the RICO offense." *United States v. Pratt*, 728 F.3d 463, 477 (5th Cir. 2013) (emphasis added) (internal quotation marks omitted).

Regarding Rosenthal's possible reliance on his unsuccessful pretrial challenge to the indictment, RICO "indictment[s] need not contain formal charges of the underlying racketeering activities or articulate the evidence that will be used to prove the allegations", so long as they identify the individuals or entities who perpetrated specific acts, and allege with specificity that they agreed to the objective of the activity. *Id.* at 478. Further, "a failure to set forth more specifically the allegations in the indictment is not reversible error"

9

where the defendants "have not alleged that they were actually disadvantaged by the indictment's purportedly inadequate charge". *United States v. Sutherland*, 656 F.2d 1181, 1197 (5th Cir. 1981).

As he did pretrial, Rosenthal asserts, in part, that the indictment contained insufficient information to put him on notice of the predicate offenses incorporated in count one. That count identified R&W as the responsible "enterprise" engaged in, or affecting, interstate commerce and acting in violation of the RICO statute. It alleged Rosenthal, and others associated with R&W, conspired "to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity". It states the predicate statutes in Title 18 Rosenthal violated, with an explanation of each: §§ 1951 (extortion); 1341 (property mail fraud); 1341 and 1346 (honest-services mail fraud); 1343 (property wire fraud); 1343 and 1346 (honest-services wire fraud); 201(b)(3) (witness bribery); 1512 (witness tampering); and "multiple acts involving bribery, chargeable under Texas Penal Code, Section 36.02(a)".

Additionally, the indictment provided the facts on which it relied in alleging violations of these provisions, including: "Rosenthal pa[id] witnesses . . . for false testimony and statements in potential lawsuits and actual lawsuits filed in Cameron County and surrounding counties, and in the Southern District of Texas"; "ma[d]e arrangements to manipulate the random case assignment system . . . "; and "directly and indirectly pa[id] Limas or instruct[ed] Solis to pay Limas, and . . . otherwise compensate[d] Limas in return for acts of judicial discretion . . . including favorable orders, rulings, and treatment".　Therefore, the indictment sufficiently detailed Rosenthal's conduct and his agreement to the objective of the conspiracy. The district court instructed the jury accordingly.

No. 13-41329

b.

Rosenthal also claims the instructions given for the predicate offenses under count one (§§ 1343 (property wire fraud); 1343 and 1346 (honest-services wire fraud); and 201(b)(3) (witness bribery)) were insufficient because they merely listed the offense elements, and contained no information about how the conspiracy to commit the offense occurred. He also maintains: the instructions "failed entirely" to instruct on state bribery under § 36.02(a) of the Texas Penal Code; and as a result, the jury was unable to determine whether Rosenthal conspired to commit any of those offenses.

The instructions, in a section titled "Specific Instructions Regarding Count One", described in detail the elements the jury would be required to find to determine whether the charged conduct had been proven beyond a reasonable doubt. Further, the instructions stated, *inter alia*: "The alleged means and methods of the alleged conspiracy were to[:] . . . locate and pay false witnesses"; "allegedly use communication facilities, including cellular telephone companies with interstate operations, and the United States mail and private interstate commercial carriers, to allegedly advance the purposes of the racketeering activity"; and "affect[ ] [cases] by the illegal payments to witnesses".

The instructions, contrary to Rosenthal's claim, additionally stated the Texas state crime of bribery was among the activities alleged to form the basis of the conspiracy. They also explained the elements the Government was required to prove to establish that offense.

Finally, the instructions explained the Government was not required to prove Rosenthal committed, or agreed to commit, any racketeering acts in order to convict him of conspiracy, only that: two or more conspirators agreed; and Rosenthal knew of, and agreed to, the overall objective.

11

No. 13-41329

c.

Rosenthal next maintains:  because, after the jury found him guilty, the court entered judgment of acquittal for counts six (property mail fraud) and 13 (honest-services mail fraud), those counts may not be relied upon as predicate acts of conspiracy to commit racketeering activity (count one).   Therefore, Rosenthal claims it is impossible to predict how a "properly instructed jury" would rule.

"One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. . . .   [A] conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself." *Salinas v. United States*, 522 U.S. 52, 65 (1997).  That the district court found insufficient evidence for counts six and 13 does not preclude the jury's finding a conspiracy to commit them.

2.

In his next challenge to the jury charge, Rosenthal asserts the court should have instructed that a defendant must participate in the "operation or management" of a racketeering enterprise in order to be convicted of a RICO conspiracy under 18 U.S.C. § 1962(d).

It is true that, to be guilty of a substantive RICO offense under 18 U.S.C. § 1962(c) (prohibiting conducting the affairs of an enterprise through "a pattern of racketeering activity"), a defendant must have "participated in the operation or management of the enterprise itself". *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).   In other words, "some part in directing the enterprise's affairs is required". *Id.* at 179 (alteration omitted).  But, our court held in *United States v. Posada-Rios* that the *Reves* "operation or management" test does not apply to *conspiracy* to commit a RICO offense under § 1962(d). 158 F.3d 832, 857–58 (5th Cir. 1998).  Instead, § 1962(d) applies to "any person"

No. 13-41329

who conspires to violate RICO. *Id.* at 857. It suffices that a defendant "adopt[s] the goal of furthering or facilitating the criminal endeavor". *Salinas,* 522 U.S. at 65.

Along that line, Rosenthal acknowledges this, and other, courts of appeals have uniformly held the *Reves* test does not apply to conspiracy under § 1962(d). Nevertheless, without citing relevant authority, he maintains the test should have been included as an element in the indictment and in the final jury instruction.

### 3.

In Rosenthal's final challenge to the instructions, he contends the court improperly instructed the jury it could convict him of aiding-and-abetting extortion under the Hobbs Act (count ten); he asserts that, as the payor of the extorted money, he was "the victim of the crime". He also maintains the instruction for count ten was not supported by allegations in the indictment.

### a.

The Hobbs Act, 18 U.S.C. § 1951(b)(2), defines extortion as: "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right". 18 U.S.C. § 1951(b)(2). This section applies both to the extortionate acts of public officials, and to private individuals who aid and abet those acts. *United States v. Rashad*, 687 F.3d 637, 643 (5th Cir. 2012).

The indictment charged Rosenthal with aiding-and-abetting Limas in committing extortion under color of official right, by "paying . . . money and other compensation in return for favorable judicial acts of discretion . . . that benefitted [Rosenthal]". This court has rejected a defendant's contention he was the victim of a public official's extortionate contact where the evidence demonstrated the defendant and his law firm paid the public official. *United States v. Wright*, 797 F.2d 245, 252–53 (5th Cir. 1986). Further, the Supreme

No. 13-41329

Court has held the term "induced" in § 1951(b)(2), does not require "the transaction . . . be *initiated* by the [public-official] recipient of the bribe". *Evans v. United States*, 504 U.S. 255, 266 (1992) (emphasis in original). In the light of Rosenthal's actions, discussed *supra*, far from being a passive victim, he initiated the plans to secure Limas' cooperation, instructed Limas to take judicial action at his direction, and directed Solis to pay Limas.

The precedent cited in support of Rosenthal's contention, *United States v. Brock*, 501 F.3d 762 (6th Cir. 2007), is inapposite. The offense at issue in *Brock* was conspiracy to commit extortion, and the decision narrowly construed § 1951 accordingly, without discussing aiding-and-abetting extortion, which is at issue here. *Id.* at 767.

b.

Rosenthal's assertion that the jury instruction for count ten was unsupported by the allegations in the indictment is equally unavailing. The instruction required the jury to find Rosenthal was an "active participant in the extortion scheme". The jury was instructed that, to be an "active participant", he must have: "served as a conduit or funneled the extorted property from one individual to the public official; or . . . initiated, requested, induced, convinced or actively solicited . . . Limas's participation in the alleged extortion scheme". Rosenthal claims the indictment fails to allege he engaged in any of these activities.

Count ten, however, incorporates the factual allegations in the indictment. The incorporated facts include allegations Rosenthal "made arrangements to have Limas paid" and alleged Rosenthal "would and did directly and indirectly pay Limas or instruct Solis to pay Limas".

C.

Prior to Rosenthal's trial, Limas pleaded guilty to racketeering, in violation of 18 U.S.C. § 1962(c). In that regard, Rosenthal claims error because,

during its rebuttal closing argument, the Government referred to Limas' guilty plea. As he concedes, his attorney failed to object; therefore, this issue was not preserved. *E.g., United States v. Meza*, 701 F.3d 411, 429–30 (5th Cir. 2012).

The relevant portion of the Government's argument stated:

> Now, the Limas [guilty] plea. It's not based – as you saw, there's nothing in there that said that Solis told me that this comes from Marc [Rosenthal] or Marc knows. What happens is Limas reviews all the evidence, evidence that you've seen, the toll records and all of the other evidence, matching up perfectly and corroborating . . . Solis' testimony. Listens to all the calls we have, matches up the orders, and comes to a common sense logical inference, the same thing that we're asking you to do.

Rosenthal contends the statement is improper because it asks the jury to consider Limas' guilty plea to a RICO charge as evidence of Rosenthal's guilt. He asserts the statement constitutes reversible plain error because it inferred the jury should do as Limas did: review the evidence and find guilt. The Government counters that the reference in its rebuttal argument to Limas' guilty plea was a permissible response to the comments Rosenthal made in his closing argument.

To demonstrate plain error, as discussed *supra*, Rosenthal must show a forfeited error that is clear or obvious, affecting his substantial rights. *Puckett*, 556 U.S. at 135. Assuming, *arguendo*, clear-or-obvious error, when examining whether the Government's remarks affected his substantial rights, "[t]he determinative question in our inquiry is whether the . . . remarks cast serious doubt on the correctness of the jury's verdict". *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007) (internal quotation marks omitted). In deciding that question, this court considers: "(1) the magnitude of the prejudicial effect of the [Government's] remarks, (2) the efficacy of any cautionary instruction

by the judge, and (3) the strength of the evidence supporting the conviction". *Id.*

For the first prong of the above three-part test, in considering the magnitude of the prejudicial effect, if any, of the Government's comments, this court examines them "in the context of the trial and attempt[s] to ascertain their intended effect". *United States v. Virgen-Moreno*, 265 F.3d 276, 291 (5th Cir. 2001). Rosenthal, *not* the Government, had Limas' indictment, plea agreement, and plea-packet memorandum admitted in evidence. In examining the impact of the Government's remarks, "the reviewing court . . . must also take into account defense counsel's opening salvo. . . . [I]f the [Government's] remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction". *United States v. Young*, 470 U.S. 1, 12–13 (1985).

During closing argument, Rosenthal's attorney stated Limas pleaded guilty "[b]ecause the evidence [wa]s overwhelming against him. They had him on more tape recorded conversations than you can possibly imagine. . . . [T]he guy gave up". Rosenthal's contention was: although the Government had overwhelming evidence of Limas' guilt, there was no direct link between Rosenthal and Solis' payments to Limas; and Limas falsely "stretched out to . . . pull [Rosenthal] in", in return for a "break" at sentencing.

Even assuming the Government's statement about Limas' guilty plea was more than an invited response, the comment, in the context of the trial, was an "isolated statement"; thus, the risk of prejudice is less than it would be "in situations where the government repeatedly makes improper arguments". *United States v. Hitt*, 473 F.3d 146, 161 (5th Cir. 2006). The prejudicial effect of the Government's comments, therefore, does not rise to the level necessary to establish reversible plain error.

16

No. 13-41329

Moreover, pursuant to the second prong of the above-stated affect-substantial-rights analysis, the court's cautionary instruction counters any potential prejudice. The jury instructions included, in relevant part: "Remember that any statements . . . by the lawyers are not evidence"; and "[t]he fact that an alleged accomplice has entered a plea of guilty to the offense charged is not evidence of the guilt of any other person".

Finally, in assessing the third and final prong of the analysis (examining the strength of the evidence against the defendant), Rosenthal concedes he cannot successfully challenge the sufficiency of the evidence against him. Rosenthal thus agrees that a reasonable trier of fact could have found the evidence established guilt beyond a reasonable doubt. *E.g., United States v. Mergerson*, 4 F.3d 337, 341 (5th Cir. 1993). Instead, Rosenthal asserts: the evidence against him is "not overwhelming"; and, as a result, the Government's guilty-plea comment may have affected the outcome of the proceedings. He cites no authority in support of his contention; nevertheless, when assessing the strength of the evidence for the third prong of the applicable analysis, nothing requires it to be "overwhelming". *See Thompson*, 482 F.3d at 787–88.

III.

For the foregoing reasons, the judgment is AFFIRMED.

17