# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2021

Lyle W. Cayce
Clerk

No. 18-50869

United States of America,

*Plaintiff—Appellee*,

*versus*

Chimene Hamilton Onyeri,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC 1:16-CR-241

Before Owen, *Chief Judge*, and Clement and Higginson, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

"This is where it gets good, man."  This was Chimene Hamilton Onyeri's response to questions regarding charges pending against him for violent crimes.  For Onyeri, criminal activity coalesced into daily life.  Rather than obtain gainful employment to support himself, he engaged in a pattern of criminal conduct.  And this pattern ultimately caught up to him when he attempted to assassinate a Texas state judge.

Onyeri appeals one count of his conviction for this pattern, namely his conviction for conspiring to violate the Racketeer Influenced and Corrupt

No. 18-50869

Organizations Act ("RICO"), 18 U.S.C. § 1962(d). Substantively, he alleges three issues on appeal. For the reasons set forth below, we affirm the judgment of the district court on all issues.

I.

Onyeri's criminal activities involved a multitude of misdeeds that spanned almost half a decade. Pertinent to this appeal is his criminal misconduct from late 2011 to 2015, the years during which Onyeri gathered and led his associates to engage in racketeering activity, which he cavalierly nicknamed the "Chimene, Incorporation." Because of the nature of Onyeri's challenges on appeal, a summary of some of the evidence adduced at his trial aids our discussion.

Onyeri recruited his friend Bernard Akwar to assist him in stealing credit card numbers through the use of a skimmer. As they perfected their craft, Onyeri also brought Henry Yehe into the enterprise, and Yehe would steal gift cards from the various stores they visited. Next, the conspirators would emboss the stolen credit card numbers onto the stolen gift cards and then encode the gift cards with the same credit card information. They converted these gift cards into cash by using them to purchase electronics and then selling the electronics for cash, or by using them to buy legitimate gift cards. Onyeri also engaged a bank employee to open a bank account for them using stolen identities. The conspirators placed some of their proceeds into that account.

Emboldened by their successes, Onyeri and Akwar also stole identities—"[n]ames, socials, and dates of birth"—to fabricate tax returns. They connected with Sherica Price, who would file the fraudulent returns for them. And, in the course of this scheme, they sought the assistance of several mailmen, bribing them into intercepting tax-refund checks on their behalves.

During the same period, Onyeri expanded this enterprise to include debit card fraud as well. He and Akwar researched "bezels," devices that would capture a debit card's information while it was used at an ATM, and they had one made to further their scheme. They also engaged Rasul Scott and Marcellus Burgin to assist them. The combination of these activities proved lucrative for Onyeri and his associates, resulting in ATM withdrawals of $20,000 and $40,000 at a time. But Onyeri's and Akwar's luck was not limitless: they were arrested and charged in Texas state court for some of this fraudulent misconduct in 2012. When they were apprehended, Onyeri was out on bond for other charges, including violent crimes. And, prior to facing those charges, Onyeri had been incarcerated for three years. As a result, Onyeri was not released on bond again and remained in custody for one year—but he attempted to continue to lead his criminal enterprise, even from prison.

It was at this point that the Honorable Julie H. Kocurek, a Texas state judge for the 390th District Court in Austin, was assigned to Onyeri's case. Little did Onyeri know, this was the beginning of the end for him. Onyeri ultimately pled guilty to the charges stemming from his and Akwar's 2012 arrest, and Judge Kocurek placed him on a three-year deferred adjudication probation, under which—"[p]rovided [he] obey[ed his] condition of probation and . . . successfully complete[d] probation"—he would not face conviction for these charges.

Only two and a half years later, however, the government filed a motion to proceed with an adjudication of guilt, following allegations that Onyeri had engaged in the fraudulent use of debit cards in Calcasieu Parish,

No. 18-50869

Louisiana.[1]  Judge Kocurek later testified at Onyeri's trial that she insisted the District Attorney's Office move quickly with Onyeri's case and reset the case for hearing on November 8, 2015.  She further testified that she suggested Onyeri may face six to seven years in prison.

Onyeri acted quickly after this, fearing that he was going to be sent to prison.  On November 6, 2015, two days before the scheduled hearing, Onyeri struck.  Before Judge Kocurek and her family returned home that Friday night, he placed a trash bag in front of her driveway to create a diversion.  When the vehicle stopped outside the house's gate so that Judge Kocurek's son could move the bag, Onyeri made his move, shooting Judge Kocurek through the passenger side window of her car.  Although he seriously injured Judge Kocurek, he "missed," and she survived.

Despite his failed attempt to assassinate the Judge, Onyeri bragged about his role in her shooting.  This led the authorities to suspect he was responsible, as an informant relayed this information.[2]  A computerized check also revealed a pending warrant for Onyeri's arrest.  At this point, the officers tried a Houston address where they believed Onyeri may be located.  Finding it to be a "bad address," they turned next to Onyeri's father's house.

An interview at his father's house alerted the authorities that Onyeri was likely travelling in a silver Dodge Charger with black rims, and shortly thereafter, a task force member identified the vehicle in the neighborhood, headed toward Onyeri's father's house. Officer Derek Uresti testified at trial that the officers followed the vehicle through the neighborhood, ultimately

---

[1] This was technically the government's second motion to proceed with an adjudication of guilt.  The first had been withdrawn.

[2] On November 7, the authorities received an anonymous tip that Onyeri was responsible for shooting Judge Kocurek, but, at the time, they concluded the tip was unfounded.  The second tip came shortly thereafter, on November 9.

initiating a traffic stop when the Charger made an errant right-hand turn. The officers apprehended Onyeri when they called the passengers out of the vehicle. Among other evidence, they recovered a "smashed" Samsung Galaxy cell phone from the rear floorboard of the vehicle.

Not long thereafter, Onyeri was charged in a seventeen-count indictment for RICO violations, including one count for conspiracy to commit RICO violations. The racketeering acts charged were: (1) mail fraud, (2) bribery of a public official, (3) wire fraud, (4) identity theft, (5) access device fraud, (6) conspiracy to commit money laundering, (7) money laundering, and (8) attempted murder. After a jury trial lasting twenty days, the jury found Onyeri guilty on all counts.[3] Onyeri timely appealed.

Following his conviction, Onyeri's father died. Because his father had been a teacher, Onyeri was to receive benefits from the Teacher Retirement System of Texas ("TRST"). Included in the district court's judgment, however, was an order to pay restitution, and the government sought to collect the restitution through a writ of garnishment that attached to Onyeri's monthly annuity payments. Onyeri objected to the garnishment, but the district court ordered that the TRST pay Onyeri's benefits toward his restitution obligation.

On appeal, Onyeri argues that the district court erred by admitting evidence obtained from the traffic stop because it was not supported by probable cause or reasonable suspicion. He further contends that there was not sufficient evidence to support his RICO conspiracy conviction and that the district court erred by denying his motion for a judgment of acquittal.

---

[3] Also among the seventeen counts in the indictment were six counts of tampering with a witness, in violation of 18 U.S.C. § 1512. For example, a law enforcement officer testified at trial that Onyeri attempted to "direct Marcellus Burgin and Rasul Scott to not talk to any of [the] authorities."

No. 18-50869

Finally, he challenges the district court's order to garnish the monthly annuity payments he receives, contending they are exempt from garnishment under 15 U.S.C. § 1672(a). We disagree with Onyeri at each turn.

## II.

## A.

We first address Onyeri's challenge to the district court's conclusion that the officers had probable cause to make the initial traffic stop and the resulting denial of Onyeri's motion to suppress the information obtained from his Samsung Galaxy.[4] He contends that Officer Uresti's testimony regarding the traffic stop was not credible. Analyzing the stop in its entirety, we conclude the district court was correct.

We review the district court's legal conclusions *de novo*, but its factual findings are reviewed for clear error. *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001). "[W]e may consider all of the evidence presented at trial, not just that presented before the ruling on the suppression motion, in the light most favorable to the prevailing party, which in this case is the Government." *Ibarra*, 493 F.3d at 530.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Probable cause is a "practical, nontechnical conception." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). It is a

---

[4] Initially, the government asserted that Onyeri did not have standing to challenge the seizure and subsequent search of this cell phone, but it ultimately withdrew its objection.

"fluid concept" guided by a totality of the circumstances analysis. *Id.* at 230, 232. We have said that "the constitutionality of [an] officer's stop of [a] vehicle must stand or fall based on whether [the defendant] violated Texas law[.]" *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006). That is, the "legal justification for the traffic stop must be 'objectively grounded.'" *United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007) (per curiam) (quoting *Cole*, 444 F.3d at 689).

Officer Uresti testified at trial that he observed the vehicle that Onyeri was riding in commit a minor traffic violation, making a wide right-hand turn into an adjacent lane. He explained how a proper right-hand turn should be made, according to the Texas Transportation Code: "when making a right turn, the operator shall approach and complete the turn closest to the . . . right-hand curb or the edge of the roadway." In this case, Officer Uresti testified, the number two lane was the proper lane for completing a right turn; "[t]he inside lane closest to the median is the number one lane, and the outside lane is the number two lane." But, he told the district court, he saw the vehicle make an improper turn "into the number one lane" in violation of Texas Transportation Code § 545.101. Officer Uresti's observation of this traffic violation therefore gave him an objectively grounded legal justification—and sufficient probable cause—to initiate the stop. *See Whren*, 517 U.S. at 819 ("Here[,] the District Court found that the officers had probable cause to believe that petitioners had violated the traffic code. That rendered the stop reasonable under the Fourth Amendment, the evidence thereby discovered admissible, and the upholding of the convictions . . . correct.").

Onyeri disputes the district court's finding that Officer Uresti's testimony was credible. The crux of his argument centers on Officer Uresti's responses that he didn't remember certain details of the traffic stop. Onyeri

No. 18-50869

argues that Officer Uresti's failure to recall aspects of the stop undermines the district court's credibility finding, and therefore, any probable cause.

Onyeri's contentions are misleading. Officer Uresti also answered, with certainty, many other questions about the traffic stop. For example, he testified that traffic was permitted to flow during the traffic stop and that the road was not obstructed. He also stated that his line of sight to the silver Charger was not obstructed in any way and that he had no doubt that he saw the Charger turn into the number one lane. These details are crucial to the determination of whether to stop the Charger, and whether the officers had probable cause. In contrast, many of the aspects of the stop that Officer Uresti could not remember were unimportant to the propriety of initiating the traffic stop.

It is eminently plausible that the traffic stop occurred just as Officer Uresti explained; nothing in the record suggests otherwise. And the district court twice stated for our review that it found Officer Uresti credible. Furthermore, "the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses" at the suppression hearing and at trial. *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005). We cannot identify any clear errors in the district court's factual findings. Accordingly, we conclude that the district court correctly denied Onyeri's motion to suppress.[5]

---

[5] Onyeri also contends that the district court erred in concluding that the officers had reasonable suspicion to make the traffic stop because, despite the warrant for his arrest, they did not have a sufficient basis to believe Onyeri was in the vehicle at the time they made the stop. Either ground—probable cause or reasonable suspicion—is sufficient to support the district court's denial of Onyeri's motion to suppress. Thus, because Officer Uresti had sufficient probable cause to believe a traffic violation occurred, and therefore to initiate the traffic stop, and because the district court did not clearly err in determining that

No. 18-50869

## B.

Onyeri preserved his challenge to the sufficiency of the evidence by moving for a judgment of acquittal at the close of the Government's case. We review these claims *de novo*, according "substantial deference to the jury verdict." *See United States v. Suarez*, 879 F.3d 626, 630 (5th Cir. 2018) (Owen, J.) (quoting *United States v. Delgado*, 672 F.3d 320, 330 (5th Cir. 2012) (en banc)). We "must affirm a conviction if, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Onyeri's challenge is specific to one offense of conviction: conspiring to violate the RICO statute. The elements of a RICO conspiracy are: (1) an agreement between two or more people to commit a substantive RICO offense; and (2) knowledge of and agreement to the overall objective of the RICO offense. *United States v. Rosenthal*, 805 F.3d 523, 530 (5th Cir. 2015); *see* 18 U.S.C. § 1962. These elements may be established by circumstantial evidence. *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005).

First, there is sufficient evidence to find that two or more people agreed to violate § 1962(c), which criminalizes racketeering activity. Evidence presented at trial showed that Onyeri engaged associates to assist him in carrying out his many fraudulent schemes. They met to discuss the organization and plan activities in furtherance of the enterprise, including mail fraud, wire fraud, and murder, as prohibited by RICO. This evidence

---

Officer Uresti's testimony was credible, we need not address Onyeri's argument that the officers lacked reasonable suspicion to make the stop.

supports the jury's determination that two or more people agreed to violate § 1926(c).

Second, there is sufficient evidence that Onyeri agreed to the overall objectives of the conspiracy; indeed, he orchestrated it. At trial, Akwar told the jury that he and Onyeri agreed that Akwar "would come with [Onyeri] to make money," which meant "going to various stores, and purchasing iPads with gift cards with stolen credit card information on it." Akwar further testified that he and Onyeri agreed to perpetrate the tax fraud together as well. The jury also heard another of Onyeri's associates, Scott, testify that he "was thinking [he was] about to get rich" once he agreed to help Onyeri with debit card and credit card skimming.

Finally, the evidence at trial showed that Onyeri himself traveled to Judge Kocurek's home to kill her and that *he* carried out this attempt, another one of the overall objectives of the conspiracy. The jury heard evidence of this not only from Burgin, and Scott, but the jury also heard Onyeri's own testimony that he was in Judge Kocurek's neighborhood that night, placed the trash bag in front of her gate, waited for the Judge and her family to return home, and was standing by her vehicle when the gun that *he was holding* "burst out." What's more, the jury heard evidence that Onyeri bragged about it. In sum, there is more than sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Onyeri agreed with several of his associates to further the overall objectives of the RICO conspiracy. *See Vargas-Ocampo*, 747 F.3d at 301. Therefore, upon review of the record, we conclude that the district court did not err in denying Onyeri's motion for a judgment of acquittal as the jury heard sufficient evidence to find Onyeri guilty of the RICO conspiracy count.

No. 18-50869

## C.

Onyeri brings one more challenge on appeal. He contests the garnishment of his monthly annuity payments, which the government sought in order to fulfill his restitution obligations. In deciding this issue, some review of the posture is instructive.

The district court ordered Onyeri to pay restitution in the amount of $178,374.41, as well as a special assessment of $1,700.00.[6] To effectuate this order, the government sought a writ of garnishment, and the clerk of the court issued the writ. The garnishee, TRST, filed an answer to the writ of garnishment, and the government responded. In its response, the government also requested an order from the district court permitting the government to garnish 100% of Onyeri's monthly annuity, which the district court granted. Onyeri requested a hearing, claiming that his monthly annuity payments were exempt from garnishment. In an order dated February 27, 2019, the district court denied Onyeri's request for a hearing and entered a final order of garnishment. Although Onyeri had taken an appeal from the final judgment issued on October 2, 2018, Onyeri did not file a second notice of appeal challenging the propriety of the ordered garnishment.

Onyeri does not contest the garnishment in its entirety; instead, he argues that the district court should not have granted the government's motion and permitted it to garnish 100% of his monthly annuity. The government contends that we do not have jurisdiction to consider this aspect of Onyeri's appeal because he was required to file a second timely notice of appeal following the final order of garnishment on February 27, 2019.

---

[6] Onyeri is jointly and severally liable for the restitution sum along with co-defendants Marcellus Burgin and Rasul Scott, would-be fraudulent tax-preparer Sherica Price, and others.

No. 18-50869

It is well-settled that a defendant may not use a garnishment proceeding to challenge the underlying judgment and restitution order in his case. *See United States v. Clayton*, 613 F.3d 592, 594, 596 (5th Cir. 2010) (holding that a defendant who filed a notice of appeal following a final order of garnishment but who did not file a notice of appeal after entry of judgment had not challenged the underlying restitution order). Whether the reverse is permissible, however, appears to be an issue of first impression for our court. Canvassing the legal landscape before us, we conclude that it is not.

The Supreme Court has confronted an analogous situation to the one we encounter here. *See Manrique v. United States*, 137 S. Ct. 1266 (2017) (Thomas, J.). In *Manrique*, the district court entered an initial judgment of conviction and sentenced the defendant to 72 months' imprisonment. *Id.* at 1270. The defendant appealed the judgment. *Id.* Two months later, the district court held a restitution hearing and ordered the defendant to pay a particular sum in restitution, thereby amending the initial judgment. *Id.* The defendant did not file a second notice of appeal, *id.*, but he nonetheless challenged the amount of restitution in his brief on appeal, *id.* at 1270–71. The Eleventh Circuit held that he could not challenge the restitution amount, and the Supreme Court affirmed, explaining that the defendant's "notice of appeal could not have been for review of the restitution order" because he "filed only one notice of appeal, which preceded by many months the . . . judgment imposing restitution." *Id.* at 1271 (internal quotation marks and citation omitted).

To be sure, *Manrique* is not this precise case. The two judgments involved—the initial and amended judgments—were indisputably a part of the core criminal proceeding. *See id.* at 1270. The initial judgment pertained to the defendant's convictions and sentence of imprisonment and ordered mandatory restitution; the amended judgment clarified the amount of restitution. *Id.* In Onyeri's case, the final order of garnishment arose later,

when the government sought to enforce the restitution order via the Fair Debt Collection Practices Act ("FDCPA"). The order in Onyeri's case was issued following a proceeding that "look[ed] more civil than criminal," even though it proceeded under the same criminal docket number as the underlying criminal prosecution. *United States v. Lee*, 659 F.3d 619, 620 (7th Cir. 2011). Not to mention, the appeal at issue in *Manrique* pertained to the restitution order; Onyeri, on the other hand, now challenges the garnishment order.

But none of these distinctions persuades us that a different rule should apply in Onyeri's case. In fact, the juxtaposition only strengthens the government's position that Onyeri should have filed a second notice of appeal. First, in contrast to the initial and amended judgments in *Manrique*, both of which involved preliminary determinations related to the defendant's restitution, the order Onyeri seeks to challenge pertains to garnishment, which is an enforcement mechanism for a restitution obligation. If a notice of appeal from an initial judgment setting mandatory restitution is not sufficient also to appeal the amount of restitution, it is difficult for us to see how a notice of appeal from a judgment ordering restitution could also extend to the enforcement of that obligation.

Second, the judgments in *Manrique* each indisputably stemmed from the same core criminal proceeding. In Onyeri's case, the judgment he seeks to appeal arguably arose out of a subsequent, civil proceeding.[7] *Cf. United*

---

[7] The basis for the government's authority to seek restitution from Onyeri is the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. The MVRA permits the government to "enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law," and this extends to orders of restitution. 18 U.S.C. § 3613(a), (f). Accordingly, the government often uses the garnishment provisions of the FDCPA to collect restitution obligations imposed in a criminal judgment. *See, e.g.*, *United States v. Ekong*, 518 F. 3d 285,

*States v. Apampa*, 179 F.3d 555, 556 (7th Cir. 1999) (per curiam) ("Some orders in criminal cases have been treated as civil matters because they are collateral to criminal punishment." (collecting cases)).  It would make little sense to require a second notice of appeal for issues within the same core proceeding but to permit an appeal from that same criminal matter to extend to collateral issues.  And what's more, our court has recognized judgments of conviction and sentencing as distinct from final orders of garnishment. *See, e.g.*, *United States v. Goyette*, 446 F. App'x 718, 720 (5th Cir. 2011) (per curiam) (treating as distinct the judgment of conviction and sentencing and the final order of garnishment for the purposes of filing a notice of appeal); *Clayton*, 613 F.3d at 593–94.

Thus, we conclude the principle from *Manrique* readily applies to Onyeri's case.  The district court entered judgment on Onyeri's sentence and conviction on October 2, 2018.  Onyeri filed a notice of appeal ten days later on October 12, 2018.  Over four months later, following further proceedings on the issue, the district court entered the final order of garnishment.  Onyeri did not file another notice of appeal.  And when he raised the issue in this appeal, the government objected.[8]

As a result, we need not address the deadlines applicable to Onyeri's second notice of appeal.  It is enough that Onyeri failed to file a second notice of appeal at all, let alone within any of the deadlines under Rule 4.  And,

---

286 (5th Cir. 2007) (per curiam); *United States v. Phillips*, 303 F.3d 548, 550–51 (5th Cir. 2002).

[8] We have suggested that Rule 4's deadlines for filing a notice of appeal are jurisdictional in a civil case but may be waived in a criminal case. *See United States v. Martinez*, 496 F.3d 387, 388–89 (5th Cir. 2007) (discussing FEDERAL RULE OF APPELLATE PROCEDURE 4 and citing *Bowles v. Russell*, 551 U.S. 205, 212–14 (2007)). To the extent the law in our circuit is unsettled, we need not address the issue because Onyeri raised the challenge on appeal, and the government objected.

No. 18-50869

Onyeri's only "notice of appeal could not have been for review of the [ordered garnishment]" because he "filed only one notice of appeal, which preceded by many months the . . . judgment [enforcing the garnishment]." *Manrique*, 137 S. Ct. at 1271. Accordingly, we cannot consider this aspect of Onyeri's appeal.

## III.

The judgment of the district court is therefore AFFIRMED. To the extent that Onyeri now attempts to appeal the final order of garnishment, that portion of his appeal is DISMISSED.