# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20162

United States Court of Appeals
Fifth Circuit

**FILED**
May 2, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JUAN AGUDIN SALAZAR, Also Known as Juan Fondin Salazar,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, CLEMENT, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Juan Salazar was charged with multiple drug and gun violations. At trial, the government presented overwhelming evidence of guilt; against the advice of counsel, Salazar decided to testify and confessed to all of the crimes charged. At the trial's conclusion, believing no factual issue remained for the jury, the district court instructed the jury "to go back and find the Defendant guilty." Because the Sixth Amendment safeguards even an obviously guilty defendant's right to have a jury decide guilt or innocence, we vacate the

No. 13-20162

conviction and remand.

I.

The indictment charged (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846; (2) aiding and abetting attempted possession with intent to distribute five kilograms or more of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) and (b)(1)(A); (3) conspiracy to possess a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) and (o); and (4) aiding and abetting possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A).  Two co-conspirators—Jose Aquino and Robert Torres—were charged in connection with the conspiracy and pleaded guilty.

Trial evidence established the following: A confidential informant ("CI") advised Agent Carlos Valles of the Bureau of Alcohol, Tobacco, Firearms, and Explosives that multiple persons were interested in committing a home-invasion-style armed robbery.  The CI introduced Valles, acting as an undercover agent, to Torres for the purpose of participating in a robbery of a drug stash house.

Over the next few months, several phone calls and in-person meetings, which were either audio- or video-recorded or both, occurred between Valles, Torres, and others.  Valles met face-to-face with Torres, Aquino, and Salazar at a gas station to discuss logistics for the home invasion; two days later, the group met there again, and Salazar confirmed that they were ready and had their "tools with them."  The group then drove to a warehouse staging area. Salazar balked at entering the premises, argued with Torres, and departed quickly in a separate vehicle.  Torres and Aquino tried to leave and were arrested; Salazar was arrested later that day.

2

No. 13-20162

From the beginning of trial, defense counsel's theory was that Salazar had engaged in but ultimately withdrew from the two conspiracies. Against the advice of counsel, Salazar decided to testify and, on cross-examination, confessed to all of the crimes charged. Per his own testimony, he did not attempt to withdraw from either conspiracy until after the conspirators arrived at the staging area, shortly before they were going to complete the job, in possession of firearms, ammunition, and other tools.

At the trial's conclusion, defense counsel requested a jury instruction on withdrawal. The district court refused, believing that even if Salazar's actions constituted withdrawal he did not withdraw early enough. In light of Salazar's confession and the inapplicability of the withdrawal defense, the court thought no factual issue remained, so it instructed the jury "to go back and find the Defendant guilty." Minutes later, the jury did so.

Salazar brings two challenges on appeal. First, he claims the district court erred in not instructing the jury on withdrawal. Second, he contends that the court violated his Sixth Amendment right to a jury trial by directing a guilty verdict.


II.

Salazar points to four events that demonstrate his withdrawal from the conspiracy: (1) Because Valles did not appear "transparent," Salazar angrily told Torres that he would not go through with the job (which Salazar claims the other co-conspirators would have overheard); (2) Salazar did not go all the way inside the warehouse; (3) he left the staging area; and (4) after leaving, he refused to answer his phone or meet with Torres. In light of this evidence, Salazar believes the district court erred by not submitting an instruction to the jury on the issue of withdrawal.

The government offers three reasons why the failure to instruct on

withdrawal was not error: "(1) Salazar did not engage in any definitive, decisive, or affirmative act to disavow or defeat the purpose of the charged conspiracies; (2) alternatively, Salazar's conduct was not sufficient to raise the issue of withdrawal; and (3) assuming arguendo that his evidence adequately raised the issue of withdrawal, Salazar's conduct came too late to absolve him of the liability for the conspiracy."

Because "[d]istrict courts enjoy substantial latitude in formulating a jury charge," we generally review "all challenges to, and refusals to give, jury instructions for abuse of discretion." *United States v. Webster*, 162 F.3d 308, 321–22 (5th Cir. 1998). "We review *de novo* a district court's refusal to offer an instruction for a criminal defense that, if credited, would preclude a guilty verdict." *United States v. Theagene*, 565 F.3d 911, 917 (5th Cir. 2009).

> A refusal to give a requested instruction constitutes reversible error only if the proposed instruction (1) is substantially correct, (2) is not substantively covered in the jury charge, and (3) pertains to an important issue in the trial, such that failure to give it seriously impairs the presentation of an effective defense."

*Webster*, 162 F.3d at 322. We review the record in the light most favorable to the defendant in determining whether the record contains sufficient evidence for the jury to find Salazar withdrew from the conspiracy in a timely fashion. *Theagene*, 565 F.3d at 917–18.

Focusing on the government's third theory, a conspirator can choose to "withdraw" from a conspiracy at any point. Because the timing of the withdrawal determines which crimes a conspirator remains liable for, we distinguish between timely and untimely withdrawals. An untimely withdrawal does not negate liability on the *conspiracy charge*[1] but instead helps a

---

[1] *See Smith v. United States*, 133 S. Ct. 714, 719 (2013):

defendant guard against post-withdrawal acts done by other co-conspirators and thereby serves to minimize his liability on subsequent crimes.

To be timely, the withdrawal must precede the commission of an overt act. *See United States v. Heathington*, 545 F.2d 972, 973 (5th Cir. 1977). In essence, the government must not be able to show a completed conspiracy. For purposes of absolving liability for the conspiracy charge, "withdrawal is impossible once an overt act has been committed."[2] If the conspiracy does not even require the commission of an overt act, a defendant can never timely withdraw and can never negate liability as to the conspiracy charge. *See, e.g.*, *United States v. Francis*, 916 F.2d 464, 466 (8th Cir. 1990).

Salazar relies extensively on *United States v. Schorovsky*, 202 F.3d 727 (5th Cir. 2000). The defendant challenged her sentence, contending that, because she withdrew from the conspiracy, "the district court clearly erred in attributing more than 200 grams of heroin to her as relevant conduct in the calculation of her base offense level." *Id.* at 728. We agreed she had withdrawn, so the court had erred in basing its sentence on "the amount of drugs trafficked by the conspirators after she effectively withdrew." *Id.* at 729.

That case has no bearing here. A withdrawal from a drug conspiracy may limit the amount of drugs a district court can rely on as relevant conduct

---

Withdrawal does not negate an element of the conspiracy crimes charged here. . . . Far from contradicting an element of the offense, withdrawal presupposes that the defendant committed the offense. Withdrawal achieves more modest ends than exoneration. Since conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law through every moment of [the conspiracy's] existence, and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot. Withdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he remains guilty of conspiracy.

(Citations omitted.)

[2] *United States v. Nicoll*, 664 F.2d 1308, 1315 (5th Cir. 1982), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984) (en banc).

for purposes of sentencing. Salazar does not, however, challenge his sentence calculation. And *Schorovsky* does not stand for the proposition that withdrawal following an overt act absolves the defendant of liability as to the underlying conspiracy charge.[3]

We assume both of the charged conspiracies required overt acts. Per his own testimony, however, Salazar did not attempt to withdraw until after the conspirators had arrived at the staging area in possession of firearms, ammunition, and other necessary tools. By that point, several overt acts in furtherance of both conspiracies had occurred.[4] Salazar's withdrawal was therefore not timely and cannot absolve him of liability on either conspiracy.[5] Accordingly, the district court did not err in declining to instruct on withdrawal.

---

[3] Our decision in *United States v. Puig-Infante*, 19 F.3d 929, 945–46 (5th Cir. 1994), similarly does not help Salazar, because it also deals with relevant conduct for purposes of sentencing.

[4] *See United States v. Brackett*, 113 F.3d 1396, 1400 (5th Cir. 1997) ("Overt acts in furtherance of a conspiracy need not be criminal . . . ."); *United States v. Pomranz*, 43 F.3d 156, 160 (5th Cir. 1995) ("In this case, various acts were committed in furtherance of the drug conspiracy. For instance, after the initial contact between Pomranz and agent DeLaFlor: telephone conversations ensued between the parties to finalize the drug transaction, Pomranz traveled from Oklahoma to Texas to personally discuss the illegal activity, plans to inspect a sample of the marihuana before the actual purchase were consummated, installments on the total purchase price were made and most crucial to this analysis, Pomranz carried a weapon during and in relation to delivery of the final drug payment. Unquestionably, the primary reason that Pomranz carried a weapon was to protect or further the drug transaction by ensuring the safe delivery of the drug money.").

[5] Salazar also attempts to support his argument with *United States v. Jimenez*, 622 F.2d 753 (5th Cir. 1980). In that case, Jimenez was charged with conspiracy to possess cocaine with intent to distribute it. *Id.* at 754. "Jimenez claimed in the trial of the case that he had withdrawn from the conspiracy prior to the commission of any overt act . . . ." *Id.* The district court determined that this possible timely withdrawal was an issue for the jury and instructed it accordingly. *Jimenez* does not apply: (1) Unlike Jimenez, Salazar has not demonstrated that he withdrew before the commission of any overt act; and (2) because the jury was instructed on withdrawal in *Jimenez*, that case can have no bearing on the question whether a district court erred in not giving such an instruction.

No. 13-20162

III.

We must determine the appropriate standard of review to assess the Sixth Amendment challenge. The government presses us to review either as invited error or under the plain-error standard. Salazar maintains that trial counsel preserved this error for appeal.

A defendant "may not complain on appeal of errors that he himself invited or provoked the [district] court . . . to commit." *United States v. Wells*, 519 U.S. 482, 487–88 (1997) (citations and internal quotation marks omitted). Invited error applies, however, only where the error can be attributed "to the actions of the defense." *United States v. Green*, 272 F.3d 748, 754 (5th Cir. 2001). Invited error imposes an even higher standard than does plain-error review: We "will not reverse on the basis of invited error, absent manifest injustice." *United States v. Pankhurst*, 118 F.3d 345, 359 (5th Cir. 1997).

The government argues that defense counsel invited this error by lamenting on the futility of closing arguments. Specifically, the government points to defense counsel's statement, "Well, what am I going to argue? That he wasn't there? That he didn't complete the conspiracy?" The government relies on W*alker v. State*, 781 P.2d 838 (Okla. Crim. App. 1989), and *Griffin v. State*, 255 S.W.3d 774 (Tex. App.—Amarillo 2008, no pet.), which it believes demonstrate invited error.

In *Walker*, the court held an *in camera* hearing:

At this hearing, defense counsel presented the stipulation to the court and Appellant affirmatively gave his consent to the agreement. He told the court that he was offering the stipulation voluntarily with a full understanding of the consequences. The trial court then announced that it would instruct the jury as to the stipulations, would allow both the State and Appellant to present evidence as to punishment and would then instruct the jury to find Appellant guilty and assess punishment. The court asked Appellant if this procedure was agreeable. Appellant answered "that's fine."

7

No. 13-20162

781 P.2d at 839–40. By explicitly agreeing to this procedure and to the directed guilty verdict, Walker had invited any error. *See id.* at 840.

In *Griffin*, the defendant pleaded not guilty of assaulting his wife. During trial, "after [his wife] testified to the assault . . . , [Griffin] informed the court that he wished to plead guilty." *Griffin*, 255 S.W.2d at 774. The state, however, did not waive its right to have a jury trial. *Id.* In light of the fact that the defendant wanted to plead guilty, "the court informed [the parties] that the jury would be instructed to return a verdict of guilty. Neither party objected to the procedure or the charge, and the court so instructed the jury." *Id.* at 774–75. Because the defendant wanted to plead guilty, the appellate court considered any problem to be invited error. *Id.* at 775.

As *Walker* and *Griffin* instruct, if a defendant wished to change his plea during trial to a guilty plea and thereby waive his right to a jury, we might invoke the doctrine of invited error. Nothing in this record, however, suggests that Salazar wished to change his plea or consented to the directed verdict.

The government's reliance on comments made by defense counsel suffers two problems: (1) Offhanded comments made by defense counsel cannot have caused the defendant to change his plea; and (2) in any event, the government misreads defense counsel's comments. The parties only appear to have been discussing how counsel could best handle closing arguments in light of the overwhelming evidence against Salazar. Nothing in the record suggests that counsel requested or consented to a directed guilty verdict at any point (and the government gives no explanation as to why counsel would do so).

Plain error also does not apply. The district court explicitly acknowledged that Salazar was preserving this argument for appeal and stated that any error regarding the directed guilty verdict would be error solely on its

8

part.[6]  Even though defense counsel did not specifically reference the Sixth Amendment interest at stake or provide any legal authority demonstrating error, the court was well aware of the glaring issue before it.[7]  Salazar has preserved this argument for appeal.

## IV.

As to the merits, the government contends that the district court did not err in instructing the jury to return a guilty verdict because Salazar voluntarily confessed after being admonished of his right not to testify.  The government asserts that the confession "equates to a plea of guilty" that waived the right to a jury trial.

For Salazar to be able to complain about a Sixth Amendment violation, this right must have attached.[8]  All four counts of the indictment carry statutory maximum penalties of greater than six months' imprisonment, so the offenses are serious,[9] and the Sixth Amendment right to a jury trial attached.

The Sixth Amendment safeguards "the accused['s] . . . right to a speedy and public trial[] by an impartial jury," U.S. CONST. amend VI, and "require[s]

---

[6] "No.  I think that I take that out of your hands.  If there's error, it's error on my part.  It's not on your part.  It's not on Mr. Gonzales' part.  It's error on the Court's part.  And I think that that removes it."

[7] *See Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 519 n.5 (5th Cir. 2010) ("Although issues not raised before the district court are generally waived, an argument is not waived on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it." (citation and internal quotation marks omitted)); *United States v. Akpan*, 407 F.3d 360, 376 (5th Cir. 2005).

[8] *See Lewis v. United States*, 518 U.S. 322, 325 (1996) ("[T]he Sixth Amendment, like the common law, reserves this jury trial right for prosecutions of serious offenses, and that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision." (citation and internal quotation marks omitted)).

[9] Any offense punishable by greater than six months' imprisonment is considered serious.  *See id.* at 326.

No. 13-20162

criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt," *United States v. Gaudin*, 515 U.S. 506, 510 (1995). Although a court may enter a judgment of acquittal,[10] the Sixth Amendment prohibits the court from directing a guilty verdict. That protection extends even to "obviously guilty" defendants.[11] "[A] judge . . . may not direct a verdict for the State, no matter how overwhelming the evidence." *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993). The instruction "to go back and find the Defendant guilty" violated the clear command in *Sullivan* and *Gaudin*. It makes no difference that the court told the jury to do so rather than entering the verdict itself.[12]

Contrary to the government's suggestion, Salazar's confession did not deprive him of his right to have a jury determine his guilt. The Sixth Amendment permits a jury to disregard a defendant's confession and still find him not guilty. This conclusion does not depend on when the confession occurs —on the stand or pre-trial—or how much the defendant confesses—to one element or to every crime. A defendant's confession merely amounts to more, albeit compelling, evidence against him. But no amount of compelling evidence can override the right to have a jury determine his guilt.

It is true that a defendant may waive his right to a jury trial by pleading

---

[10] *See* FED. R. CRIM. P. 29(a) ("After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.").

[11] *Crawford v. Washington*, 541 U.S. 36, 62 (2004) ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.").

[12] *See Connecticut v. Johnson*, 460 U.S. 73, 83 (1983) (plurality opinion) ("The Court consistently has held that a trial judge is prohibited from entering a judgment of conviction *or directing the jury to come forward with such a verdict . . .* regardless of how overwhelmingly the evidence may point in that direction." (emphasis added)).

guilty.[13] And he can, at least in theory, waive this right in the midst of trial. We have never held, however, that he changes his plea from not guilty to guilty just by confessing on the stand; certainly none of the cases cited by the government hints as much.[14] And nothing in this record suggests that Salazar, at any point, wished to change his plea to guilty; the court did not ask him, following his confession, whether he wished to do so.

Finally, assessing harmlessness in this context would be inappropriate. Because a jury never rendered a verdict of guilty beyond a reasonable doubt, it would be meaningless to ask whether it would have returned the same verdict absent the constitutional error:

> The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.

*Sullivan*, 508 U.S. at 280 (citations omitted).

The judgment of conviction is VACATED and REMANDED for further proceedings.

---

[13] *See* FED. R. CRIM. P. 11(a)(1) ("A defendant may plead not guilty, guilty, or (with the court's consent) nolo contendere."); *United States v. Robertson*, 698 F.2d 703, 707 (5th Cir. 1983) ("A defendant who pleads guilty waives his Fifth Amendment right against compulsory self-incrimination, his Sixth Amendment right to a jury trial, and his Sixth Amendment right to confront adverse witnesses.").

[14] *See Rucker v. State*, 580 P.2d 1005 (Okla. Crim. App. 1978) ("It has long been a constitutional and statutory right of accused in this state that a defendant has the right to a jury's determination of his or her guilt, even in such cases where during the course of a trial the defendant admits his or her guilt."); *Mougell v. State*, 260 P.2d 447, 451 (Okla. Crim. App. 1953) ("[A] confession from the witness stand from the defendant does not meet the requirements of a plea of guilty voluntarily entered. The trial judge cannot take away the defendant's right to a trial by jury as provided by law.").