# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60741

United States Court of Appeals
Fifth Circuit

**FILED**

February 22, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff – Appellee,

v.

FRANK GEORGE OWENS, JR., also known as State Raised; ERIC GLENN PARKER,

> Defendants – Appellants.

---

Appeals from the United States District Court
for the Northern District of Mississippi
USDC 4:14-CR-00141

---

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM[*]:

Defendant-Appellants Frank George Owens, Jr. and Eric Glenn Parker bring this appeal. Parker contends that the government did not prove venue in the Northern District of Mississippi on his counts of conviction. Owens contends that there is insufficient evidence to support his counts of conviction. Additional arguments are raised on appeal regarding evidentiary admissions, jury instructions, denials of pretrial motions, and sentencing.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60741

We affirm the judgment on all grounds, except as to Parker for Count II, which we vacate.

I.

This case involves accusations that Parker and Owens in their leadership roles with the Aryan Brotherhood of Mississippi (ABM) conspired to commit racketeering activity and committed acts of violence and drug offenses. The ABM is a state-wide organization that operates both within the Mississippi prison system and in the "free world" outside the prison system. ABM has a written constitution and a leadership hierarchy. The highest level of this hierarchy is "the Wheel," which consists of three to four leaders referred to as "Spokes." An order from the Wheel carries full authority throughout the state of Mississippi. Owens and Parker were Captains in the ABM.

At trial, Brandon Creel, who was a Spoke, testified that he and Parker distributed ten to twenty pounds of methamphetamine from 2010 to 2012. Creel testified that this drug trafficking was a personal business for him and Parker and that the proceeds did not get distributed to the ABM treasury. In 2010, Parker fronted methamphetamine to a fellow ABM member, Michael "Skip" Hudson, who subsequently avoided paying. Creel ordered that "minutes" (a fistfight) occur between Parker and Hudson to settle the drug debt. Hudson did not show up for the ordered minutes, which was a violation of an ABM "direct order." Owens then ordered ABM member James Dean and ABM prospect Sonny Maxwell to kidnap Hudson so he could "gift wrap him and give him to Eric Parker."

Maxwell and Dean took Hudson to an ABM member's house where he was beaten by several ABM members, including Owens. Owens and two other ABM members put Hudson in the trunk of a car and told Dean and

No. 16-60741

Maxwell that he was taking Hudson to Parker. Later that night, Creel received a panicked phone call from Parker saying that there had been a "situation" and that he needed help. Creel, at this time, was the ranking ABM officer not in prison. Parker and Owens were both present when Creel arrived at Parker's trailer. Parker explained that things had gotten out of hand and that he needed help getting rid of Hudson's body. Creel testified that he never actually saw a body because it was rolled up in a carpet when he arrived. He agreed to dispose of the body for Parker and Owens. The rolled carpet containing Hudson's body was then placed in a fifty-gallon drum, transported back to Creel's house, and then taken to a nearby property. Creel then burned the drum for four or five days before tossing the remnants into a nearby river.

Creel testified that Parker had told him that he choked Hudson to death. According to Creel, he did not authorize Hudson's death, and he did not think that there was ever an ABM-authorization for the incident. Parker's girlfriend, Jo Kalyn Henderson, testified that Parker had said that he and Owens strangled a man to death. Thomas Parker too testified that Owens told him about killing Hudson.

Owens moved from the Southern District of Mississippi to the Northern District of Mississippi where he subsequently was incarcerated and rose to the level of Spoke with the ABM. Parker became less involved with the ABM but never covered or removed his tattooed ABM brand. Maxwell received his tattooed ABM brand for the kidnapping and beating of Hudson.

A federal grand jury in the Northern District of Mississippi indicted multiple ABM members, including Owens and Parker, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Violent Crimes in Aid of Racketeering Act (VICAR). Owens was indicted on

3

No. 16-60741

Count I (RICO Conspiracy); Count III (VICAR Kidnapping); Count IV (VICAR Murder); and Count VII (VICAR Attempted Murder).  Parker was indicted on Count I (RICO Conspiracy); Count II (Conspiracy with Intent to Distribute Methamphetamine); and Count IV (VICAR Murder).  Parker and Owens were tried and convicted in the Northern District of Mississippi on all counts.  Each timely appealed.

## II.

Parker contests venue as to all three counts of conviction: (1) Count I: RICO Conspiracy; (2) Count II: Conspiracy with Intent to Distribute Methamphetamine; and (3) Count IV: VICAR Murder.  We review venue issues *de novo*.  *United States v. Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009).  A verdict will be affirmed "if, viewing all the evidence in the light most favorable to the government, a rational jury could conclude, from the evidence presented at trial, that the government established venue by a preponderance of the evidence."  *Id.*  Circumstantial evidence is sufficient to establish venue and the evidence need only show "any single act that initiated, perpetuated, or completed the crime."  *Id.*

## A.

Venue was proper in the Northern District for the RICO conspiracy count.  A RICO conspiracy is a continuing offense.  *See Smith v. United States*, 568 U.S. 106, 111 (2013).  Venue for continuing offenses is governed by 18 U.S.C. § 3237, which allows the prosecution of the offense "in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  "To prove a RICO conspiracy, the government must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense."  *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998).

4

No. 16-60741

The substantive RICO provision requires that the government prove: (1) the existence of an enterprise that affected interstate commerce; (2) the defendant was associated with the enterprise; (3) the defendant participated in the conduct of the enterprise's affairs; and (4) participation constituted a pattern of racketeering activity. *See United States v. Jones*, 873 F.3d 482, 489–90 (5th Cir. 2017); 18 U.S.C. § 1962(c). A pattern of racketeering activity occurs when the defendant commits at least two predicate acts within ten years. 18 U.S.C. § 1961(5). A conviction for RICO conspiracy pursuant to 18 U.S.C. § 1962(d) does not require that a defendant actually commit two or more racketeering acts, only that the defendant "adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65–66 (1997). A conspiracy can exist even if some members are unaware of the number or identities of their fellow conspirators. *See United States v. Greenwood*, 974 F.2d 1449, 1457 (5th Cir. 1992).

Parker insists that the government never established that any of his criminal activity was ABM-related or that his ABM activity in the Southern District was related to ABM activity in the Northern District. The government introduced evidence that Parker had a leadership role in the ABM and that under the ABM constitution he had the power to direct the group's activities in the entire state. The government does not need to prove that Parker committed an overt criminal act on behalf of the ABM. Under the RICO conspiracy statute, it is enough to prove that Parker knew of the ABM's activities and agreed to facilitate the criminal enterprise. *See Salinas*, 522 U.S. at 65.

Parker was an ABM leader. The ABM operated throughout the state of Mississippi. Because a RICO conspiracy is a continuing offense, the government only had to prove by a preponderance of the evidence that the

5

conspiracy was begun, continued, or completed in the Northern District. *See United States v. Nieto*, 721 F.3d 357, 369 (5th Cir. 2013) (holding venue was proper in the Western District of Texas in a RICO conspiracy case in which the predicate acts occurred in the Northern District of Texas because the conspiracy was centered in the Western District). ABM members committed numerous overt acts and specific instances of racketeering activity in the Northern District, including: the attempted murder of Jeremy Bailey in the Marshall County Correctional Facility; the burglary of a pawnshop in Coldwater, Mississippi; methamphetamine trafficking directed from the Marshall County Correctional Facility; and the burglary of a pawnshop in Corinth, Mississippi. A reasonable jury could conclude from the evidence that the RICO conspiracy count was based on statewide activity and that venue was therefore proper in the Northern District of Mississippi.

## B.

Venue was not proper as to Parker on the methamphetamine conspiracy count. "Venue is proper in conspiracy offenses in any district where the agreement was formed or an overt act occurred." *United States v. Winship*, 724 F.2d 1116, 1125 (5th Cir. 1984). "In a conspiracy to possess with intent to distribute controlled substances, the object of the conspiracy is for the co-conspirators to profit from the purchase and selling of controlled substances." *United States v. Niamatali*, 17-40150, 2018 WL 580650, at *4 (5th Cir. Jan. 26, 2018) (citing *United States v. Morris*, 46 F.3d 410, 415 (5th Cir. 1995)).

Parker insists that the evidence showed that he engaged in drug trafficking in his personal capacity, not as an ABM member, and that no overt act or agreement as to his drug dealing occurred in the Northern District. The government responds that venue is proper in the Northern

No. 16-60741

District because the ABM engaged in drug trafficking as racketeering activity in the Northern District and Parker was an ABM leader.

The government's evidence does not support the contention that it advances in support of venue on this count. The evidence shows that Brandon Creel and Parker distributed methamphetamine together and that Parker distributed drugs to fellow ABM members, including Michael Hudson. The uncontested evidence demonstrates that they were acting in their individual capacities in that particular conspiracy. No evidence shows that Parker's proceeds from his drug sales went to the ABM treasury.[1] Likewise, the uncontradicted evidence at trial shows that Parker's drug-distribution activity exclusively occurred in the Southern District and was not part of the ABM's drug distribution efforts in the Northern District. Accordingly, we must vacate Count II.[2]

### C.

Parker also contests venue in the Northern District on the VICAR murder count. VICAR murder consists of four elements: (1) an enterprise

---

[1] At oral argument, the government contended for the first time that there was testimony from Perry Mask that Parker's drug proceeds went to the ABM treasury. Mask's trial testimony only stated that if the ABM loaned a funds that such member would need to pay back a portion of an income, including drug proceeds, to the ABM treasury. Mask did not testify that Parker's drug proceeds went to the ABM treasury. In his testimony about the conspiracy to distribute methamphetamine, Mask specifically testified that he did not know Parker, that Parker had nothing to do with Mask's drug distribution efforts, and that "[t]hey had their own thing going down south that I didn't have nothing to do with and I had what I had going. He didn't have nothing to do with what I had going."

[2] Parker's counsel asserted for the first time at oral argument on appeal that vacating his conviction on Count II would require that we also vacate the RICO Conspiracy conviction on Count I because the drug conspiracy was one of Parker's two predicate acts. A RICO conspiracy conviction, however, does not require that the defendant have committed two predicate acts. *See Salinas*, 522 U.S. at 65–66. As conceded by Parker's counsel at oral argument, if only Count II is vacated, we do not need to remand for resentencing because the guideline range was calculated based on Parker's convictions on Counts I and IV.

engaged in racketeering; (2) the activities affected interstate commerce; (3) a murder; and (4) the murder was committed for payment by the enterprise or "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise." 18 U.S.C. § 1959(a)(1). Parker insists that even if a murder took place, it occurred in the Southern District. We conclude that a reasonable jury could infer that the murder was done in aid of racketeering by a unified, state-wide organization and that venue was in the state where the ABM primarily operated and the murder occurred. *See United States v. Wilson*, 116 F.3d 1066, 1078–79 (5th Cir. 1997), *vacated on other grounds by United States v. Brown*, 161 F.3d 256 (5th Cir. 1998) (en banc) (holding the inquiry is whether a reasonable jury could infer that the violent act was because of the defendant's membership in a racketeering enterprise); *United States v. Jones*, 873 F.3d 482, 493–95 (5th Cir. 2017) (holding on a sufficiency of the evidence challenge that "in aid of racketeering" was proved as to only some of the VICAR counts).

## IV.

Owens challenges the sufficiency of the evidence on his four counts of conviction: (1) Count I: RICO conspiracy; (2) Count III: VICAR kidnapping; (3) Count IV: VICAR murder; and (4) Count VII: VICAR attempted murder. Our review is *de novo*, examining whether a "reasonable trier of fact [could have found] that the evidence established guilt beyond a reasonable doubt" when viewing the evidence "in the light most favorable to the government." *United States v. Michelena-Orovio*, 719 F.2d 738, 742 (5th Cir. 1983) (citations omitted).

Owens argues that the government failed to prove its case on Count I, the RICO conspiracy, because there is no evidence that he profited from drug-trafficking by other ABM members. The government counters that a specific

link to ABM drug-trafficking activities is unnecessary given his leadership role and involvement in other ABM-related criminal acts. The elements of RICO conspiracy are: (1) an agreement to commit a substantive RICO offense; and (2) "the defendant knew of and agreed to the overall objective of the RICO offense." *United States v. Rosenthal*, 805 F.3d 523, 530 (5th Cir. 2015). Given the evidence of Owens's leadership role in the ABM, a reasonable jury could have found there was sufficient evidence to prove Owens's involvement in a RICO conspiracy.

On Count III, VICAR kidnapping, Owens claims that there was insufficient evidence to show his involvement in the kidnapping of Michael Hudson. There is evidence in the record, however, from which a reasonable jury could conclude that Owens ordered James Dean and Sonny Maxwell to kidnap Hudson and told Maxwell that he would gain ABM membership for the act.

Turning to Count IV, VICAR murder, Owens argues that because Hudson's body was not found, there is insufficient evidence to support the VICAR murder conviction under Mississippi law. The government argues that VICAR employs the generic definition of murder that was in effect at the time 18 U.S.C. § 1959 was passed and does not incorporate state procedural or evidentiary requirements; therefore, there is no requirement that humans remains be produced in a VICAR prosecution. We need not resolve whether VICAR requires instruction on the state's substantive law for the offense or a generic definition for the offense because Mississippi law does not require the production of a body. *See Miskelley v. State*, 480 So. 2d 1104, 1107–08 (Miss. 1985) (stating that the fact of death may be proved by circumstantial

evidence).  There is sufficient circumstantial evidence for a reasonable jury to conclude beyond a reasonable doubt the fact of Michael Hudson's death.[3]

There is also sufficient evidence on Count VII, VICAR attempted murder, for a reasonable jury to find Owens guilty beyond a reasonable doubt.  The government presented evidence that Owens ordered the stabbing of Bailey and that Ricky Jenkins received an ABM tattoo for the act.  Accordingly, there was sufficient evidence for a reasonable jury to convict Owens on all counts.

V.

Owens and Parker appeal the denial of their mistrial motion that was made during the prosecutor's direct examination.  We review the denial of a motion for new trial for abuse of discretion.  *United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002).  The prosecutor asked a witness: "About when was Hudson killed?"  Owens and Parker contend that asking this question was prejudicial error because the fact of Hudson's death had not been established.  The government insisted that there was no prejudice because of the substantial circumstantial evidence that Hudson had been killed.

A defendant has a substantial burden to establish that a prosecutor's comments constitute reversible error.  *United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001).  "The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's

---

[3] Owens also contends that there was insufficient evidence to convict him on Count IV because the jury was not properly instructed on the elements of *corpus delicti* under Mississippi law.  *Corpus delicti* requires: "(1) the death of the victim, and (2) the existence of criminal agency as the cause of death."  *Taylor v. State*, 672 So. 2d 1246, 1272 (1996).  The jury was instructed that "a person may be convicted of murder if you find, beyond a reasonable doubt, that the person unlawfully, and with deliberate design, killed another human being."  The jury instruction contained both elements of *corpus delicti* under Mississippi law, and the evidence was sufficient for a reasonable jury to find that both elements were proved beyond a reasonable doubt.

verdict." *United States v. Weast*, 811 F.3d 743, 752 (5th Cir. 2016) (quoting *United States v. Davis*, 609 F.3d 663, 677 (5th Cir. 2010)). Three factors guide this analysis: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Id.* Here, the objection was sustained outside the presence of the jury and no further cautionary remark was given. However, the other factors show that the remarks did not cast serious doubt on the correctness of the jury's verdict. There was sufficient evidence to establish the fact of Michael Hudson's death, and so, the prosecutor's question does not cast "serious doubt" on the correctness of the jury's verdict.

## VI.

Owens and Parker raise three issues regarding admission of evidence: (1) the admission of co-conspirator statements, which they allege violates the confrontation clause; (2) the admission of what they allege were racially-charged photographs and ABM materials; and (3) the admission of government exhibits 1–43, which they allege was error under Federal Rule of Evidence 401. The "court reviews preserved objections to evidentiary rulings for abuse of discretion, subject to the harmless error standard." *United States v. Valas*, 822 F.3d 228, 239–40 (5th Cir. 2016).

## A.

It is settled law in our court that co-conspirator statements are non-testimonial. *See United States v. Holmes*, 406 F.3d 337, 347–48 (5th Cir. 2005); *Summers v. Dretke*, 431 F.3d 861, 875–78 (5th Cir. 2005). Parker asks us to revisit our precedent but has not provided a reason under the rule of orderliness that we may do so. *See Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (quoting *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378

11

No. 16-60741

(5th Cir. 2008)) (stating under our rule of orderliness, "one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court"). In accordance with our precedent, we hold that the district court did not abuse its discretion in admitting the co-conspirator statements.[4]

B.

Both Parker and Owens urge that the district court erred in admitting the photos of the ABM tattoos, because under Federal Rule of Evidence 403, any probative value was outweighed by the prejudice of showing the jury racially-charged tattoos. Parker argues that there was no probative value in admitting the photographs because his identity was not in question and they were not admitted for the purposes of proving an element of the crime. Owens argues that the photographs were cumulative and prejudicial because they inflamed the passion of the jury due to the racial nature of the tattoos, especially given the numerous copies of the ABM constitution introduced at trial that included similar symbols.

Parker cites to a Sixth Circuit case for the proposition that gang affiliation evidence is not admissible if there is no connection between the evidence and charged offense. *See United States v. Ford,* 761 F.3d 641, 649–50 (6th Cir. 2014). *Ford,* however, supports holding that there was no error here: It states that evidence of gang affiliation is admissible when it is relevant to establish a relationship, such as in a conspiracy case. *Id.* The

---

[4] In his reply brief, Owens for the first time asserts that the admission of Parker's girlfriend's testimony that Parker confessed to her that he and Owens killed Hudson is error under *Bruton v. United States*, 391 U.S. 123 (1968). Owens forfeited this ground for appeal by failing to adequately raise the issue in his opening brief. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).

government needed to establish that there was a relationship between Parker's ABM affiliation and the crimes with which he was charged.

Moreover, at trial Parker put his continued affiliation with the ABM at issue. The government introduced the tattoos to show that Parker was still a member of the ABM because Parker would have had to remove them otherwise. We caution the government that racially-charged tattoos should not be introduced into evidence to influence the jury when identity and membership are not at issue. *See Ford*, 761 F.3d at 649–50 (quoting *United States v. Anderson*, 333 F. App'x 17, 24 (6th Cir. 2009)) ("[G]ang affiliation evidence 'is inadmissible if there is no connection between the gang evidence and the charged offense.'"). Here, however, the tattoos were relevant evidence of Parker's continued affiliation with ABM, so there was no error.

Owens cites an Eleventh Circuit case, *United States v. Bowman*, 302 F.3d 1228, 1240 (11th Cir. 2002), which held that the admission of unredacted gang documents containing racial statements was more prejudicial than probative. *Bowman* ultimately held, however, that the error was harmless because the defendant's substantial rights were not affected, given the overwhelming evidence of criminal activity. *Id.* We caution the government against the introduction of un-redacted evidence that includes racial statements and racially-charged tattoos that are not probative of the ultimate issues in the case. *See id.* at 1240 (holding any probative value of an organization's whites-only policy was outweighed by the possibility that the jury's verdict might have been "clouded by racial issues").

However, even assuming *arguendo* that there was any error here, it was harmless. *See United States v. El-Mezain*, 664 F.3d 467, 526 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) ("A nonconstitutional trial error is harmless unless it had 'substantial and injurious effect or

No. 16-60741

influence in determining the jury's verdict.'"). There was significant evidence of Owens's leadership in the ABM and involvement with the charges in the indictment. Accordingly, the district court did not abuse its discretion in admitting such evidence.

C.

Parker and Owens collectively appeal the admission of government exhibits 1–43 at trial, urging that they are not relevant under Rule 401. The district court did not abuse its discretion in admitting the exhibits because they were relevant to proving the broader conspiracy with which Parker and Owens were charged.

VII.

Parker appeals the district court's denial of a request for a jury instruction on withdrawal from conspiracy. A district court's failure to give a requested withdrawal from conspiracy instruction is reviewed for abuse of discretion. *United States v. Rojas*, 812 F.3d 382, 405 (5th Cir. 2016).

A conspirator may withdraw from a conspiracy at any time, but the timing of the withdrawal determines the crimes for which the conspirator remains liable. *United States v. Salazar*, 751 F.3d 326, 330 (5th Cir. 2014). Withdrawal is an affirmative defense, and for which the defendant has the burden. *United States v. MMR Corp. (LA)*, 907 F.2d 489, 499 (5th Cir. 1990). To demonstrate withdrawal, the defendant must show that he took affirmative acts that were inconsistent with the object of the conspiracy. *United States v. Heard*, 709 F.3d 413, 428 (5th Cir. 2013). "Mere cessation of activity in furtherance of the conspiracy is not sufficient to show withdrawal." *Id.*

The district court denied Parker's request for a jury instruction on withdrawal from a conspiracy because it did not believe that Parker

14

No. 16-60741

committed an affirmative act signifying withdrawal.  Parker argues this was error because he stopped attending ABM meetings and participating in ABM activities after 2011.  However, merely ceasing active involvement in ABM activity is not sufficient to show withdrawal.  Even if Parker ceased activity with the ABM, he has not met his burden to show an affirmative act demonstrating that he withdrew from the RICO conspiracy.

## VIII.

Parker also appeals the denial of two pre-trial motions: (1) a motion to sever his trial from Owen's trial; and (2) a motion for an expedited psychiatric evaluation.  We address the denials of these motions in turn.

## A.

Parker argues the district court's denial of his motion for severance was prejudicial because: (1) his co-defendant, Owens, placed a Kill on Sight order on him; (2) the proof as to Parker's role in the RICO conspiracy only comprised three days of the trial and the ABM as a whole was put on trial; and (3) the co-conspirator statements would not have been admitted if there had been a severance.

Denial of a motion to sever is reviewed "under the 'exceedingly deferential' abuse of discretion standard." *United States v. Chapman*, 851 F.3d 363, 379 (5th Cir. 2017) (quoting *United States v. Whitfield*, 590 F.3d 325, 355 (5th Cir. 2009)).  Defendants charged with the same conspiracy should generally be tried together. *United States v. McCord*, 33 F.3d 1434, 1452 (5th Cir. 1994).  "To establish that the district court abused its discretion in denying a motion to sever, a 'defendant must show that: (1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the

15

government's interest in economy of judicial administration.'" *United States v. Snarr*, 704 F.3d 368, 396 (5th Cir. 2013) (internal citations omitted).

Parker's arguments do not meet this standard. He did not explain how a hostile co-defendant affected Parker's ability to prepare for trial or mount a defense. Neither has Parker cited case law stating that extreme hostility from a co-defendant is alone sufficient to show prejudice. Nor does potential prejudice from spillover evidence or a quantitative disparity in evidence between co-defendants warrant severance. *See United States v. Broussard*, 80 F.3d 1025, 1037 (5th Cir. 1996). Moreover, the co-conspirator statements are non-testimonial in nature and therefore would have been admissible against Parker under Federal Rule of Evidence 801(d)(2)(E), even if the trials had been severed. The district court, therefore, did not abuse its discretion.

## B.

Parker asserts that he was prejudiced by the district court's failure to hold a competency hearing after he attempted suicide. The government responds that a suicide attempt alone does not require a competency hearing.

We review the district court's decision not to hold a competency hearing for abuse of discretion. *United States v. Mitchell*, 709 F.3d 436, 440 (5th Cir. 2013). To determine whether there is "reasonable cause" to doubt a defendant's competence, the court considers: "(1) any history of irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical opinion on competency." *United States v. Messervey*, 317 F.3d 457, 463 (5th Cir. 2002). "[A] suicide attempt, by itself, is not necessarily sufficient to create 'reasonable cause' for a competency hearing." *Mata v. Johnson*, 210 F.3d 324, 330 (5th Cir. 2000).

Parker has not directed us to any evidence other than his suicide attempt. When the officer's responded to a report from Parker's mother,

16

No. 16-60741

Parker had already abandoned his suicide attempt, and the attempt did not require medical attention. After initially being placed on suicide watch, Parker repeatedly told officials he was not suicidal and was removed from the watch. Under these circumstances the district court did not abuse its discretion in denying Parker's motion to hold a competency hearing.

## IX.

Parker raises a generic challenge to his sentence based primarily on his contention that venue was improper on all counts. He also asserts, without further explanation, that he was illegally sentenced because the presentence report violated *United States v. Booker*, 543 U.S. 220 (2005), and the Sixth Amendment. We hold that Parker's generic challenge to his sentence is not sufficiently briefed and the argument is forfeited. *See Scroggins*, 599 F.3d at 446–47.

Vacating only Count II does not affect Parker's sentencing guideline range, as Parker's counsel conceded at oral argument. Because we conclude that venue in the Northern District was proper on Counts I and IV, which are the determinative counts for calculating Parker's guideline range, remand for resentencing is not required. Other than as to Count II, which we vacate, we affirm Parker's sentence.

## X.

For the foregoing reasons, we VACATE Parker's conviction on Count II because venue is improper in the Northern District of Mississippi. The district court's judgment in all other aspects is AFFIRMED.

17