# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 29, 2022

Lyle W. Cayce
Clerk

No. 21-40422

United States of America,

*Plaintiff—Appellee*,

*versus*

Jimmy James Mamoth, Jr.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:19-CR-146

Before Jones, Ho, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

Jimmy James Mamoth, Jr. appeals his guilty plea conviction for attempted bank robbery in violation 18 U.S.C. § 2113(a). Mamoth contends that the district court violated Federal Rule of Criminal Procedure 11(c)(1) by improperly involving itself in plea negotiations, and that he was deprived of his Sixth Amendment right to self-representation. Because Mamoth fails to show reversible error, we affirm.

No. 21-40422

# I.

On October 2, 2019, a federal grand jury indicted Mamoth for attempted bank robbery in violation 18 U.S.C. § 2113(a).[1]  Early in the proceedings, Mamoth invoked his right under *Faretta v. California*, 422 U.S. 806 (1975), to proceed pro se.  The magistrate judge granted Mamoth's request and appointed an Assistant Federal Public Defender to serve as Mamoth's standby counsel.

On July 13, 2020, Mamoth signed a plea agreement calling for a 144-month term of imprisonment and $34,203 in restitution.  Mamoth subsequently appeared in court and pled guilty pursuant to that agreement.  The district court accepted Mamoth's guilty plea but deferred acceptance of the agreement until after it could examine a Presentence Investigation Report (PSR).  The district court eventually rejected the agreement, and Mamoth elected to withdraw his guilty plea and proceed to trial.  Thereafter, the magistrate judge appointed Mamoth new standby counsel because his prior counsel relocated to a different office.

On January 8, 2021, the district court held a final pretrial conference.  The events giving rise to this appeal occurred after that conference ended.[2]  At that time, Mamoth was returned to a holding cell at the courthouse.  Meanwhile, the prosecutors and Mamoth's standby counsel went to the district court's chambers to ask whether the court would be amenable to a

---

[1] The grand jury returned a superseding indictment on June 3, 2020, which charged Mamoth with the same crime but modified the initial indictment's language.

[2] There are no transcripts of the January 8, 2021, post-conference, off-the-record conversations between (1) standby counsel and the prosecutors; (2) standby counsel and Mamoth; or (3) standby counsel, the prosecutors, and the district court.  We relate those events as described in Mamoth's motion to dismiss the parties' subsequent plea agreement, the Government's response to Mamoth's motion, and the district court's order denying Mamoth's motion.

plea agreement.[3]  After the district court indicated it would entertain a plea agreement, standby counsel went to discuss a possible plea with Mamoth.  By this time, the prosecutors refused to deal with Mamoth directly because he "had repeatedly accused [them] of improper behavior."  Standby counsel informed Mamoth that the prosecutors, who were waiting outside the holding cell, wanted to know what it would take to reach a plea agreement.  Mamoth said he would plead guilty if the prosecutors would accept a 46-month term of imprisonment.  The prosecutors and standby counsel then returned to chambers and proposed a plea agreement including a 46-month prison term.  The district court rejected the proposed deal.

According to Mamoth's subsequent motion to dismiss, when standby counsel communicated the court's rejection, Mamoth said he wanted "to negotiate his own plea with all parties."  Standby counsel informed Mamoth "this was not possible."  In response, Mamoth instructed standby counsel to "ask the court what sentence it will accept."  The prosecutors and standby counsel returned to the court's chambers.  They asked whether the court would entertain a sentence of 70–87 months.  The court responded that such an agreement "would likely be acceptable" because the proposed sentence appeared to fall within the applicable Sentencing Guidelines range.

After standby counsel told Mamoth the court would likely accept a sentence of 70–87 months, Mamoth agreed to plead guilty.  The prosecutors prepared the necessary paperwork, and the district court held a change-of-plea hearing later that day, at which Mamoth pled guilty to one count of attempted bank robbery.  The court accepted Mamoth's plea and ordered the probation office to prepare a PSR to assist the court at sentencing.

---

[3] Mamoth was not in attendance, the district court explained, "because a pro se criminal defendant is never allowed in the judge's private chambers."

No. 21-40422

Two months after pleading guilty, Mamoth moved to dismiss the indictment and plea agreement or, alternatively, to withdraw the agreement. He argued that he had been denied his right under the Sixth Amendment to proceed pro se and that the district court had violated Federal Rule of Criminal Procedure 11(c)(1) by interfering in the plea-bargaining process. The district court denied Mamoth's motion. The court concluded there was no denial of Mamoth's right to self-representation because standby counsel merely facilitated communications between Mamoth, the prosecutors, and the court, while "Mamoth retained actual control of his case and final decision-making power." The court also concluded that its statement to counsel "that it would potentially accept a plea agreement for a term within the Guidelines range" did "not run afoul of Rule 11."

Although the PSR ultimately assigned Mamoth a Guidelines range of 110–137 months of imprisonment, the district court recognized that the plea agreement provided for a sentence of 70–87 months. Accordingly, it sentenced Mamoth to 87 months of imprisonment, below the Guidelines range, and three years of supervised release. Mamoth timely appealed.

## II.

Mamoth, now represented by counsel, raises two issues on appeal. First, he asserts that the district court violated Rule 11(c)(1) by participating in plea negotiations before the parties reached an agreement. Second, he contends that his Sixth Amendment right to self-representation was violated during the plea-bargaining process.

## A.

Mamoth maintains that the district court violated Rule 11 when it advised standby counsel and the prosecutors in an off-the-record conversation that a plea agreement calling for a sentence of 70–87 months "would likely be acceptable." Rule 11(c)(1) provides, "An attorney for the

4

government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions." FED. R. CRIM. P. 11(c)(1). Ordinarily, we review such a claim for harmless error, asking: "(1) Did the sentencing court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant?" *United States v. Johnson*, 1 F.3d 296, 298 (5th Cir. 1993) (en banc). The Government, however, asserts that Mamoth invited any error and, consequently, we should review his claim only for manifest injustice.

Under the invited error doctrine, "[a] defendant may not complain on appeal of errors that he himself invited or provoked the district court to commit." *United States v. Lerma*, 877 F.3d 628, 632 (5th Cir. 2017) (quoting *United States v. Salazar*, 751 F.3d 326, 332 (5th Cir. 2014)). "Invited error imposes an even higher standard than does plain-error review: We will not reverse on the basis of invited error, absent manifest injustice." *Salazar*, 751 F.3d at 332. The doctrine "applies, however, only where the error can be attributed to the actions of the defense." *Id.*; *accord United States v. Rodriguez*, 602 F.3d 346, 351 (5th Cir. 2010) ("For the invited-error doctrine to apply, defendant (or his counsel) must have induced the error.").

We pretermit deciding whether the district court violated Rule 11 because we conclude that any error was invited by Mamoth. After standby counsel returned from chambers and informed Mamoth that the court rejected the parties' proposed agreement for a 46-month sentence, Mamoth stated that he wanted to negotiate with the parties directly. Standby counsel informed Mamoth that was not possible, presumably because the prosecution refused to negotiate with Mamoth directly after he accused them "of repeated improprieties throughout negotiations." In response, Mamoth instructed standby counsel to "ask the court what sentence it w[ould] accept." Mamoth's instruction prompted standby counsel and the

prosecution to return to chambers.  Though standby counsel did not pose Mamoth's exact question to the court, the lawyers inquired about a sentencing range of 70–87 months, between the two ranges the court had already rejected (46 months and 144 months).

This is quintessential invited error.  Mamoth wanted to know "what sentence [the court] w[ould] accept."  Per Mamoth's directive, standby counsel asked.  The court responded that the proposed range "would likely be acceptable," and Mamoth subsequently accepted the plea deal.  Because Mamoth "invited or provoked" the district court's participation, he cannot complain about it now absent a showing of "manifest injustice."  *See Salazar*, 751 F.3d at 332; *see also United States v. Doran*, 564 F.2d 1176, 1176–77 (5th Cir. 1977) (per curiam) (holding that where "the defendant himself injected the plea bargain situation into his direct testimony," he could not obtain reversal under Rule 11 "due to his cross-examination by the prosecutor concerning statements he made during plea bargaining negotiations").

Mamoth did not file a reply brief, so he did not respond to the Government's assertion of invited error.  Thus, he has made no attempt to argue manifest injustice.  Reviewing the record, we discern none.

The district court's participation in negotiations here was far less egregious than that in other cases requiring reversal under the harmless error standard.  *Cf. United States v. Hemphill*, 748 F.3d 666, 673 (5th Cir. 2014) (reversing where the district court's unsolicited comments "tended to pressure [the defendant] into accepting an offer the court preferred" and "could be viewed as suggesting that the court already thought [the defendant] was guilty"); *United States v. Daigle*, 63 F.3d 346, 348 (5th Cir. 1995) (reversing where the trial judge stated "that he would most likely follow any sentence recommendation by the government").  And Mamoth neither said nor implied at the final change-of-plea hearing that he felt

coerced or pressured by the court's comments.  Instead, he indicated that he understood the plea agreement, that it was voluntarily entered, and that his decision to plead guilty was based on conversations between himself, standby counsel, and the prosecution.  These facts fall short of demonstrating manifest injustice.

**B.**

Next, Mamoth asserts that his Sixth Amendment right to self-representation was violated.[4] Specifically, Mamoth emphasizes that after the district court rejected the second plea agreement, the prosecutors and standby counsel, without his involvement or agreement, came up with a proposed plea agreement calling for a sentence of 70–87 months and asked if the district court would consider it.

The Sixth Amendment guarantees a criminal defendant not only the right to counsel, but also the right to waive that right and represent himself. *Faretta*, 422 U.S. at 819–20, 833–35; *United States v. Long*, 597 F.3d 720, 723 (5th Cir. 2010).  That right applies "at all critical stages of the criminal proceedings," *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quotation omitted), including "the plea-bargaining process," *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  An impermissible "denial of the right to self-representation constitutes a structural error that is not subject to harmless error review and instead requires automatic reversal." *Batchelor v. Cain*, 682 F.3d 400, 405

---

[4] The Government contends that Mamoth waived the right to challenge a violation of his Sixth Amendment right to self-representation by entering a knowing and voluntary guilty plea.  However, we cannot apply waiver here.  A Rule 11 error implicates the validity of a guilty plea. *See United States v. Alvarado-Casas*, 715 F.3d 945, 953 (5th Cir. 2013) (An "appeal waiver does not bar our review of [the defendant's] claims of Rule 11 error[.]").  If we credit Mamoth's alleged claim of Rule 11(c)(1) error, a question we do not decide, *see supra* II.A., Mamoth's guilty plea would not operate to bar his self-representation claim on appeal.  Accordingly, we address the merits of Mamoth's Sixth Amendment challenge.

No. 21-40422

(5th Cir. 2012); *see McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) ("The right is either respected or denied; its deprivation cannot be harmless.").

A district court "may appoint 'standby counsel' to assist [a] pro se defendant in his defense," even if the defendant objects to the appointment. *McKaskle*, 465 U.S. at 170, 177 (emphasis omitted). But the extent of standby counsel's unsolicited participation is limited by the defendant's right to self-representation. *Id.* at 177. In *McKaskle*, the Supreme Court recognized that "the objectives underlying the right to proceed pro se may be undermined by unsolicited and excessively intrusive participation by standby counsel." *Id.* (emphasis omitted). To distinguish between permissible and impermissible interference, the Court imposed two limits on the extent of standby counsel's participation: "First, the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. . . . Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.* at 178 (emphasis omitted).

Because the participation Mamoth challenges occurred during the plea-bargaining process, and thus "outside the presence of [a] jury," we are concerned with "only the first of these two limitations," *see id.* at 179, i.e., the principle that a "pro se defendant must be allowed to control the organization and content of his own defense," *id.* at 174 (emphasis omitted). "This is the core of the *Faretta* right." *Id.* at 178. And that right is "eroded" where "standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, . . . or to speak instead of the defendant on any matter of importance." *Id.* (emphasis omitted).

We are not aware of precedent specifically addressing the scope of standby counsel's participation in pretrial plea-bargaining. The closest cases

have discussed standby counsel's role in sidebar or in-chambers conferences with the court. While the analogy is not exact, we find those cases and their interpretations of *McKaskle* instructive. In *United States v. Mills*, the Second Circuit found no Sixth Amendment violation when the defendant was excluded from sidebar conferences in which his standby counsel participated. 895 F.2d 897, 903–05 (2d Cir. 1990). The Second Circuit conceded that once the defendant "stated that he wished to attend the side bars and objected to being excluded, the court should have allowed him to attend." *Id.* at 905. But the court concluded that "in the context of the trial as a whole," the few instances of standby counsel's exclusive participation did not deprive the defendant of his right to "control and guide his defense." *Id.*

Conversely, in *United States v. McDermott*, the Tenth Circuit held that the defendant's exclusion, over his objection, from *thirty* bench conferences violated his Sixth Amendment right to self-representation. 64 F.3d 1448, 1454 (10th Cir. 1995). The Tenth Circuit emphasized that many of the exclusive conferences addressed critical issues, including the defendant's motion for a judgment of acquittal, his motion for mistrial, and various evidentiary concerns. *Id.* at 1452. Importantly, the court explained that the analysis is "fact-specific, and some minor incursions, as in *Mills*, will fall short of a Sixth Amendment violation." *Id.* at 1454 (explaining *McKaskle* "stop[ped] short of a per se rule when it state[d] that such events only 'erode' *Faretta* rights").

Likewise, the Ninth Circuit, in *Frantz v. Hazey*, acknowledged that "[i]n some cases" standby counsel's participation "can 'erode' *Faretta* rights without violating them." 533 F.3d 724, 741 (9th Cir. 2008) (en banc). But the court found the case before it was "not a borderline one of that kind." *Id.* The defendant in *Frantz* was excluded from an in-chambers conference addressing two mid-deliberation inquiries submitted by the jury. *Id.* at 731. Because the conference involved decisions on issues that neither standby

counsel nor the defendant could "have accurately predicted or rehearsed in advance," the court concluded that the defendant's "exclusion resulted in a complete silencing of [his] voice on the matters." *Id.* at 741.[5]

Applying these principles, we conclude that Mamoth was not deprived of his right to self-representation. From April 29, 2020, the date Mamoth elected to proceed pro se, to January 8, 2021, the date of the plea discussions at issue, Mamoth filed over sixty motions and three interlocutory appeals, engaged in discovery, conducted plea negotiations with the prosecution, and attended court hearings at which he argued various of his motions. Standby counsel played no role in those proceedings outside registering courtroom appearances and transmitting discovery and other requested files to Mamoth.

Mamoth and the prosecution reached the first, 144-month plea agreement without any assistance from standby counsel. But after Mamoth "repeatedly accused the [prosecution] of improper behavior," the prosecutors refused to negotiate with him directly. So, following the final pretrial conference on January 8, the prosecution approached standby counsel and asked him to confer with Mamoth about a potential agreement. Mamoth proposed a sentence of 46 months and standby counsel communicated that offer. The prosecution agreed, but the court, when approached in-chambers by the prosecution and standby counsel, rejected the parties' agreement.

Nothing up to this point suggests that standby counsel served as anything other than an emissary for Mamoth. While Mamoth had a right to

---

[5] Though the Ninth Circuit remanded the case for an evidentiary hearing, it held that the defendant's exclusion from the conference, if unconsented, violated the Sixth Amendment. *Frantz*, 533 F.3d at 740.

self-representation during the plea-bargaining process, "there is no constitutional right to a plea bargain, and the prosecut[ion] need not offer a plea bargain if [it] would prefer to go to trial." *United States v. Crain*, 33 F.3d 480, 487 (5th Cir. 1994). It was thus constitutionally permissible for the prosecution to refuse to negotiate directly with Mamoth. By serving as an intermediary, standby counsel merely "assist[ed Mamoth] in overcoming routine obstacles that st[ood] in the way of the defendant's achievement of his own clearly indicated goals." *McKaskle*, 465 U.S. at 184.

Mamoth focuses his argument on what happened next. As explained above, after the district court rejected the parties' 46-month agreement, Mamoth informed standby counsel that "he (Mamoth) would like to negotiate his own plea with all parties." Standby counsel replied, "this was not possible," and Mamoth responded that standby counsel "should ask the court what sentence it w[ould] accept." The prosecution and standby counsel then returned to chambers and asked if the court would entertain a sentence between 70–87 months. Mamoth takes issue both with his exclusion from the in-chambers discussion and with standby counsel's inquiring about a specific range to which Mamoth had not explicitly agreed.

The ability to determine one's own plea is certainly a "matter of importance" to which *McKaskle*'s limitation applies. *See Lafler*, 566 U.S. at 162. Though Mamoth did not have a constitutional right to negotiate with the prosecution directly, his *Faretta* rights extended to the plea-bargaining process and, thus, to the conversations held in-chambers regarding specific terms of an eventual agreement.

Nevertheless, considering the plea-bargaining process as a whole, we cannot say that in this instance Mamoth was deprived of his right to self-representation by virtue of his exclusion from this one conference. At all times, Mamoth maintained "actual control" over the plea negotiations. *See*

*McKaskle*, 465 U.S. at 178.  Before each in-chambers discussion, including the one at issue, standby counsel spoke with Mamoth directly and ascertained his intent.  Mamoth initially suggested a 46-month sentence and, after that was rejected, he directed standby counsel to ask what sentence the court would accept.  Standby counsel, as intermediary, complied.

True, the prosecution and standby counsel posed a 70–87 month sentencing range, as opposed to "ask[ing] the court what sentence it w[ould] accept."  But this range was based on the parties' prior negotiations, and it fell between the 46- and 144-month sentencing ranges Mamoth previously approved but the court had rejected.  More importantly, once standby counsel relayed the court's response, it was solely up to Mamoth whether to accept or reject the proffered deal.

In sum, we are satisfied that standby counsel's participation during the plea-bargaining process fell within the confines of *McKaskle*'s limitation.  Mamoth's exclusion from the final in-chambers discussion is a far cry from the repeated exclusion deemed unconstitutional in *McDermott*, 64 F.3d at 1454.  Further, the conversations at issue here involved matters that Mamoth could "have accurately predicted or rehearsed in advance."  *Cf. Frantz*, 533 F.3d at 741.  Like the defendant in *Mills*, Mamoth also retained the sole right to "control and guide" plea negotiations through his power of acceptance, which was never infringed.  895 F.2d at 905.  While what happened here perhaps "should not serve as a model for future" plea negotiations involving a pro se defendant, "we believe that [standby] counsel's involvement fell short of infringing [Mamoth's] *Faretta* rights."  *McKaskle*, 465 U.S. at 186.

## III.

For the foregoing reasons, the district court's judgment is

AFFIRMED.